THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTONIO BERNARDO, Appellant.

Second Department, October 19, 1981

1

APPEARANCES OF COUNSEL

*Jacob R. Evseroff (Bennett M. Epstein* of counsel), for appellant.

*Eugene Gold, District Attorney (Cynthia Kean* of counsel), for respondent.

OPINION OF THE COURT

*Per Curiam.*

The defendant appeals from a judgment convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

The indictment charged defendant with intentionally causing the death of one Alphonso "Chino" Comacho on a street in Brooklyn on February 11, 1978. It was alleged in the indictment that defendant, acting in concert with others, caused the death of Comacho by shooting and stabbing him and by beating him with sticks and bats.

At the trial two witnesses were called by the prosecution to show that defendant's involvement, with several other persons, in the fatal attack upon Comacho, was the use by him of a knife with which he inflicted wounds upon the victim. The first witness, Ismael Gonzalez, a 16-year-old youth awaiting sentence on a plea of guilty to attempted robbery, testified that during the melee he first observed defendant with his right hand raised over and behind his head. Then he saw the hand come forward "hitting toward Chino." Although Gonzalez testified that he made his observation five or six feet from the incident, he admitted that, because of the darkness, he could not see what, if anything, defendant had in his hand.

On the reopening of the People's case, Nicholas Mavronas, one of the owners of a nearby bar, Palacio Greco, testified that at 2:55 A.M. on February 11, 1978, defendant and several other persons ran out of the bar and proceeded down the block. Approximately five minutes later defendant returned to the bar with three other persons. He was

carrying a 13-inch long knife, the blade of which was dripping with blood. Mavronas also testified that defendant and the others went into the bathroom of the bar where they evidently cleaned the knife. After defendant and the others left the bar, Mavronas proceeded to clean up the blood remaining in the bathroom.

From the above summarization of the testimony, it is clear that the prosecution relied almost wholly upon circumstantial evidence to establish the guilt of the accused. Therefore, in such an instance, the circumstances must be satisfactorily established, and of such character as, if true, would exclude to a moral certainty every other hypothesis except that of the accused's guilt *(People v Weiss,* 290 NY 160, 163; *People v Woltering,* 275 NY 51, 61). Not only must all of the circumstances be consistent with and point to the accused's guilt, but they must be inconsistent with his innocence *(People v Fitzgerald,* 156 NY 253, 258; see, also, Richardson, Evidence [Prince, 10th ed], § 148, p 119).

It follows, therefore, that since CPL 300.10 (subd 2) mandates that the court "state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts," the court's charge to the jury should have included instructions on the degree and quality of proof required in a case such as this based almost wholly on circumstantial evidence. Although the evidence of guilt in this case was strong, we do not believe it was overwhelming. We therefore conclude that the failure of the trial court to give a charge on circumstantial evidence was prejudicial error requiring reversal and a new trial in the interest of justice, notwithstanding the absence of an exception to the charge (see *People v Vasquez,* 47 AD2d 934). The fact that no exception was taken to the charge as given and that no request to charge was made "'is of no moment * * * where a [homicide] conviction is founded upon an erroneous charge'" (see *People v Benjamin,* 47 AD2d 861, 862).

COHALAN, J. (dissenting). I dissent and vote to affirm the judgment.

The majority has set out the factual circumstances, with which in the main I agree, but since the facts are suscepti-

ble of different interpretations, I have set out my own version of them.

Alphonso Comacho, a young man 18 years of age, was slain on Saturday morning, February 11, 1978, at about 3:00 A.M. The homicide occurred on the sidewalk across the street from the Palacio Greco, a bar and grill in Brooklyn.

Four men "ganged up" on the decedent. He was shot, stabbed and bludgeoned. He died the next morning.

The defendant was indicted as one of Comacho's assailants. The People produced two main witnesses at the trial. The first was Ismael Gonzalez, 16 years of age. He testified that he knew the defendant and that on the occasion in question he saw Bernardo at the scene swinging his right arm toward the victim, while the other three males were also engaged in the attack. Gonzalez did not know what, if any, weapon Bernardo had in his hand.

Gonzalez identified the defendant from the rear and testified that he had known him for the space of two or three years before the homicide. The other main witness was Nick Mavronas, 30 years of age. He has a financial interest in the bar business conducted in the Palacio Greco and owned the premises in which it was located. At the trial, he testified that within about five minutes after the fracas in which Comacho was attacked, Bernardo returned to the bar (which he had left shortly before) carrying a bloody knife about 13 inches long overall. Bernardo went directly to the men's room. Nick followed him. In the men's room Bernardo took some toilet tissue, wiped the blade of the knife dry, and then walked out of the lavatory with it. Nick stayed behind and cleaned up the mess.

Mavronas knew the defendant only as "Satch". That seemed to be the case with all of his patrons. Those he knew by name, he knew only by the first name, or by a nickname. All the others he knew only by sight.

At the time of the homicide, Nick and his associate had been operating the Palacio Greco for about a month, having taken over from the former proprietor.

The defendant produced several character witnesses. In addition, he produced one David Rodriguez (as an alibi witness) who said that he was in the bar on that morning

and that Bernardo was also there. At the time that the defendant was alleged to have been one of the quartet attacking Comacho, he, Bernardo, Rodriguez said, was standing next to him and outside the front door of the tavern and across the street from the incident. The defendant himself took the stand and testified in much the same vein as Rodriguez.

A few days before this incident, Comacho (the deceased) and two others had accosted friends of the defendant and had robbed one of them of some money, which may or may not have provided a motive for the assault and ensuing death.

Although not raised at the trial, it is now the contention of the defendant that since the proof in the case was based in part on circumstantial evidence the court should have charged on that issue despite the absence of any request to so charge.

The trial record is barren of the slightest reference to circumstantial evidence by the prosecutor or by defense counsel or by the court. It may well be that as a matter of trial tactics, defense counsel wanted to shy away from the "bloody knife" and the gory details of the killing.

The majority of my brethren contend that the court should have charged on the issue because, as they aver, the interest of justice transcends the general rule of evidence and would require us to reverse and order a new trial on that ground (see CPL 470.15, subd 3, par [c]).

In support of their position, they cite *People v Vasquez* (47 AD2d 934) and *People v Benjamin* (47 AD2d 861, 862). In *Vasquez,* the evidence connecting the female defendant with the crime was completely circumstantial. "There were no eyewitnesses to the actual slaying, and the testimony implicating defendant was supplied by a woman who had a prior history of mental illness, had been a drug user for nine years, had admitted having a 'fix' of heroin and some pills on the night in question and who was still 'high' when she gave her statement to the police at the station house." *(People v Vasquez, supra,* p 935.)

In sharp contrast to the facts in *Vasquez,* Gonzalez, in the instant case, saw the actions of Bernardo as he, Ber-

nardo, acted in concert with the other assailants in dispatching Comacho. At the time of the incident, Gonzalez was not under the influence of either drugs or alcohol.

In *Benjamin (supra)* the defendant was convicted of murder in the second degree. He took the stand in his own defense and pleaded justification. On the "most favorable light" theory, in view of the defendant's testimony this court reversed and remitted for a new trial, despite the absence of a request to charge or an exception taken.

Here, the facts are a far cry from those in *Benjamin (supra)*. Defendant admitted to being present at the Palacio Greco and to watching the fatal attack from across the street. This disputed issue was strictly a fact question for the jury to determine.

The state of the law as recently enunciated by the Court of Appeals in *People v Thomas* (50 NY2d 467, 471) is to the effect that: "As a general rule points which were not raised at trial may not be considered for the first time on appeal (CPL 470.05, subd 2; *People v Robinson,* 36 NY2d 224; *People v Gurley,* 42 NY2d 1086; *People v Kibbe,* 35 NY2d 407, 413-414, affd *sub nom. Henderson v Kibbe,* 431 US 145)."

CPL 470.05 ("Determination of appeals; general criteria") and CPL 470.15 ("Determination of appeals by intermediate appellate courts; scope of review") do not contain any mandates in derogation of the general rule; and significantly, each of the cases immediately above involved an indictment for murder in the second degree.

With respect to the charge of the court, the only requests (two in number) made by defense counsel were (1) that in addition to charging murder in the second degree the court also charge down to manslaughter in the first degree, and (2) that the testimony of the character witnesses be given due consideration by the jury. The court complied with both requests.

I would affirm.

TITONE, J. P., MANGANO and MARGETT, JJ., concur; COHALAN, J., dissents and votes to affirm the judgment, with an opinion, in which WEINSTEIN, J., concurs.

Judgment of the Supreme Court, Kings County, rendered September 11, 1979, reversed, as a matter of discretion,in the interest of justice, and new trial ordered.