■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVIER ORTIZ, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Pitaro, J.), rendered January 17, 1985, convicting him of criminal possession of a controlled substance in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The evidence adduced at trial concerning the defendant's alleged possession of cocaine was insufficient as a matter of law to establish his guilt of the crime charged. On December 8, 1983, Victor Rita and William McAlpin, agents with the United States Immigration and Naturalization Service (hereinafter the INS), went to an apartment located in Queens County to investigate a report of an illegal alien at that location. The defendant opened the door to the apartment but in response to the INS agents' inquiry claimed that he did not reside there. Four other adults, the codefendants Jaime Gomez, Maria Ortiz Grajales, Amanda Reyes and Carlos Garcia, were also present in the apartment at the time of the events in question. The agents asked each individual to produce some form of documentation indicating their status in the country. Gomez responded that he resided in the apartment and produced his green card. The defendant indicated that he had documentation but that it was elsewhere. Grajales told the INS agents that she did not have her green card with her but she might have some other papers there which would document her status. Grajales, who was dressed in pajamas, indicated that the apartment was not her permanent residence but she was living there at the moment.

Rita accompanied Grajales to a bedroom of the apartment so that he could check her papers and Grajales could get dressed. McAlpin remained in the living room with the other four individuals. Rita recovered from the bedroom two plastic bags containing a white powder which later analysis revealed to be cocaine. In the meantime, McAlpin had taken the

defendant aside and again asked him whether he had any documentation. While they were engaged in conversation in the kitchen, McAlpin observed a passport in an open drawer. The passport belonged to the defendant.

The testimony elicited at the trial further revealed that the apartment was not leased to the defendant or to any of his codefendants. Nor was the telephone for that address listed in the name of any of those persons. The defendant was not observed anywhere near the bedroom from which the cocaine was recovered.

The defendant's presence in the apartment where the narcotics were found is not sufficient for a finding of guilt. Since the defendant was not in actual possession of the narcotics, the People had to prove beyond a reasonable doubt that he was in constructive possession of the contraband. The evidence fails to establish that the defendant exercised, or that he could have exercised, any dominion and control over the area where the cocaine was found (see, People v Rodriguez, 104 AD2d 832; People v Sanabria, 73 AD2d 696; Penal Law § 10.00 [8]). There was no evidence that the defendant resided in the apartment or that he frequented it on a regular basis. In fact, the only evidence connecting the defendant to the apartment is the fact that his passport was found therein. Accordingly, the defendant's conviction must be reversed and the indictment dismissed. Thompson, J. P., Weinstein, Eiber and Spatt, JJ., concur.