■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILTON DAVIS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Lakritz, J.), rendered April 23, 1985, convicting him of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by reversing the conviction for criminal possession of a controlled substance in the third degree, vacating the sentence imposed thereon and dismissing that count of the indictment; as so modified, the judgment is affirmed.

The defendant's conviction arose out of a so-called buy-and-bust operation conducted at a three-story building in Queens County. Prior to the transaction, the prerecorded money used to purchase the drugs was sprayed with a fluorescent tracing powder which, although invisible to the naked eye, would show up under an ultraviolet light on the hands of anyone who had handled the money. Armed with this money, undercover Officer Cathy Liddie approached the building and told a man standing outside that she was interested in purchasing four "nickel bags" of cocaine. The man took the money from the undercover officer, placed it through a slot in the steel gate at the entrance of the building, and stated "give me four". In response a pouch made of two "playing cards" and containing four foil packets of cocaine was slid through the same slot. The man then handed the cocaine to the under-cover officer.

When the transaction was complete the backup team moved in. Detective John Philie arrested the man standing outside the building while his partner Detective James Turnbull used a battering ram on the front door. The footsteps of more than one person were heard running up the front staircase. Once in the building Philie and Turnbull, seeing no one on the first floor, ran to the second floor, where Turnbull apprehended

someone who was trying to get into the second-floor apartment. Philie continued to the third floor, but found no one in the garbage-strewn rooms there. Returning to the second floor Philie and Turnbull entered a "railroad-type" apartment and discovered two men in the second bedroom, one of whom was the defendant. Both men had the fluorescent powder on their hands, although the man apprehended outside the apartment did not. A subsequent search of the building uncovered a tin of cocaine lying on the floor of the first bedroom in the second-floor apartment, drugs and drug paraphernalia in the two rooms on the first floor, and cocaine in the third-floor apartment. Additionally, a jacket containing several items of the defendant's identification was found on the first floor, and recovered from the defendant's pants pocket were keys to the second-floor apartment.

As part of the defense case the defendant's uncle, Willie Davis, testified that his family alone resided in the building in question, and that on the day of his arrest the defendant was at the house for the purpose of letting Davis's children in when they arrived home from school. Davis had given the defendant the key to the apartment when he arrived that morning. Davis was aware that a drug ring was being operated from the building, but denied any involvement. The defendant corroborated Davis's testimony. The jury found the defendant guilty of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree (possession with intent to sell) and this appeal ensued.

Contrary to the defendant's contention, the evidence adduced at trial, when viewed in the light most favorable to the People, was legally sufficient to establish his guilt of criminal sale of a controlled substance in the third degree beyond a reasonable doubt (see, People v Contes, 60 NY2d 620). The defendant's belongings were found in the area from which the sale was effectuated, tending to rebut the defendant's assertion that he spent the day in his uncle's second-floor apartment. Additionally, as the police were entering the building they heard footsteps running from the area of the sale to the area where the defendant was ultimately apprehended. Most importantly, the evidence established that the defendant had handled the purchase money, which was recovered commingled with other money on the first floor of the building. Based upon the foregoing we conclude that the evidence was sufficient to support the conviction for criminal sale of a controlled substance in the third degree.

We reach a different result, however, with respect to the charge of criminal possession of a controlled substance in the third degree. Firstly, there was no evidence adduced at trial linking the defendant to the cocaine found on the third floor, save the defendant's presence in the building, which is clearly insufficient *(see, People v Ortiz,* 126 AD2d 677; *People v Reyes,* 126 AD2d 681). Nor was there sufficient evidence to establish that the defendant exercised dominion and control over the drugs found on the first floor. Although the defendant's presence on the first floor at some point may reasonably be inferred, again, that presence alone is insufficient to establish his constructive possession of the drugs found on that floor beyond a reasonable doubt *(see, People v Ortiz, supra; People v Reyes, supra).* Finally, the defendant's presence in a bedroom on the second floor, combined with his possession of a key to the second-floor apartment, without more, was insufficient to establish the defendant's constructive possession of the cocaine found in another bedroom of the second-floor apartment beyond a reasonable doubt *(see, People v Dawkins,* 136 AD2d 726; *cf., People v Torres,* 68 NY2d 677; *People v Vasquez,* 142 AD2d 698). Thus, the defendant's conviction for criminal possession of a controlled substance in the third degree with intent to sell must be reversed, and that count of the indictment dismissed.

Even if we were not to conclude that the evidence adduced was legally insufficient to support the defendant's conviction on the possessory count, reversal of that conviction would still be required based upon the trial court's failure, upon request, to give a circumstantial evidence charge with respect thereto. In cases such as this, where the evidence of guilt is wholly circumstantial and far from overwhelming, the failure to give such a charge upon request mandates reversal *(see, People v Bernardo,* 83 AD2d 1; *cf., People v Borazzo,* 137 AD2d 96, 100). Mollen, P. J., Brown, Lawrence and Spatt, JJ., concur.