■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RICHARD RIVERA, Respondent.—Order, Supreme Court, Bronx County (Arlene R. Silverman, J.), rendered February 6, 1990, which, inter alia, set aside a jury verdict finding defendant

guilty of criminal possession of a controlled substance in the second degree, unanimously affirmed.

On April 26, 1989, at approximately 4:00 P.M., in front of 1400 Jessup Place, a residential building in the Bronx that had been targeted by the police for drug dealing, defendant sold heroin, packaged in two glassine envelopes marked "PAS-SION", to undercover Police Officer Alfred, in exchange for $20 in pre-recorded buy money. Officer Alfred then returned to his car and radioed defendant's description to his backup team. Officers Kelly, Solomon, and the other members of the backup team then went to the building to make an arrest. When Kelly saw defendant, he stopped his car, got out, and approached, but before he was able to identify himself, defendant turned and ran into the six story, forty-eight unit building. Officers Kelly and Solomon chased defendant, never losing sight of him. Defendant ran to the left staircase, one of two in the lobby, up to the fourth floor and into Apartment 4-D, one of eight apartments on that floor, with Kelly at all times only steps behind him, and Solomon only steps behind Kelly. Before defendant could close the door, Kelly pushed his way into the apartment and arrested defendant in the foyer. Also, upon entering the apartment, Kelly and Solomon saw codefendant Francisco Ramos sitting in a chair in the living room, and he too was arrested, with the pre-recorded buy money in his pocket. Approximately five feet from the chair in which Ramos had been sitting, Kelly noticed that the linoleum had been rolled back, exposing a hole in the floor. Near the hole, lying on the floor, were two sawed-off shotguns, and inside the hole were a loaded and operable .38 caliber handgun, a brown paper bag containing 2,399 glassine envelopes of heroin marked with the same "PASSION" logo as those defendant had sold to Alfred, and cash. The heroin had a total weight in excess of 2⅝ ounces. Defendant and Ramos were indicted for the sale that occurred outside of the building, and for possession of the drugs and three guns found inside the apartment. Ramos absconded before trial and remains at large.

The jury convicted defendant of criminal sale of a controlled substance in the third degree for the drugs he sold to the undercover officer, and criminal possession of a controlled substance in the second degree for the drugs found in the apartment. Thereafter, the trial court granted his motion pursuant to CPL 330.30 (1) to set aside the verdict insofar as it found him guilty of possessing the drugs found in the apartment, finding that the circumstantial evidence of possession

adduced by the People, even if believed by the jury, was insufficient as a matter of law to prove possession, since it did not exclude to a moral certainty every hypothesis except guilt.

We agree. The People rely upon three circumstances in their attempt to connect defendant to the apartment, and thereby to the drugs found inside: (1) the pre-recorded buy money used in the sale outside the building was recovered from a cohort inside the apartment; (2) defendant made a "bee-line" to the apartment when fleeing from the police; and (3) the drugs recovered in the apartment bore the same logo as the drugs defendant sold outside the building. This evidence did not exclude to a moral certainty that defendant was merely a seller of the two glassines of heroin, and did not possess the 2,399 glassines of heroin buried in the floor boards of an apartment he did not own, lease, or have any connection to, other than seeking refuge there when pursued by the police. There was no evidence that defendant leased the apartment; no keys were found in his possession; no clothes or other property belonging to him were found inside the apartment; no rent receipts, bills or other evidence linked him to the apartment. Moreover, defendant was arrested in the foyer, not the living room where the drugs were found, and the drugs were recovered only after both men were arrested, five feet from where codefendant had been sitting, in a hole six inches deep, out of sight of anyone entering the apartment, concealed in a paper bag. Also found in this hole was a .38 caliber revolver, which the jury found defendant innocent of possessing. Such proof does not exclude every reasonable hypothesis other than the one posited by the People that defendant and Ramos exercised joint dominion and control over the 2,399 glassine envelopes of heroin found in the apartment.

As the trial court ruled, the evidence was perhaps sufficient to show that Ramos, the codefendant, was guilty of acting in concert with defendant in the sale, but it was not sufficient to show that defendant was acting in concert with Ramos in possessing the heroin found in the apartment (compare, People v Morales, 162 AD2d 128). That defendant fled to the apartment, entering without a key, was not indicative of a joint financial interest with Ramos in the drugs found there, and indeed was no more indicative of his dominion and control over those drugs than would be his mere presence in the apartment (see, People v Headley, 74 NY2d 858 [proof that the premises were used for drug dealing was not sufficient to establish that defendant himself was guilty of unlawful posses-

sion, even though he attempted to flee from the premises when the police arrived]; *People v Harvey,* 163 AD2d 532; *People v Vastola,* 70 AD2d 918 [access alone does not amount to dominion and control]).

It is noteworthy that the jury acquitted defendant of all weapons possession charges, although the People essentially relied upon the same circumstantial evidence for purposes of establishing defendant's dominion and control over the guns as they did to establish his dominion and control over the drugs. Arguably, the People's case may have been stronger with respect to the two sawed-off shotguns, which, unlike the .38 caliber revolver and the drugs found in a hole beneath the floor boards, were recovered in open view on the living room floor. This difference in result is probably accountable to the fact that the drugs in the apartment bore the same logo as those that defendant sold to the undercover officer. But it would have been entirely reasonable to infer from this fact that defendant was a mere retail seller of the drugs for Ramos, not his partner, with no knowledge, let alone control, over the drugs Ramos kept in the apartment and supplied him with. Concur—Murphy, P. J., Carro, Rosenberger, Wallach and Ross, JJ.