OPINION OF THE COURT
Smith, J.
The issue here is whether defendant was deprived of the effective assistance of counsel when his attorney absented himself during jury deliberations and the attorneys for two codefendants assumed the defendant’s representation. Because an actual conflict existed between defendant and codefendants, defendant was deprived of the effective assistance of counsel. We, therefore, reverse and order a new trial.
Defendant Allah and codefendants Robinson and Thompson were arrested and charged with various counts of robbery, assault, criminal possession of a weapon and grand larceny. *398 Represented by separate attorneys, they were jointly tried by a jury.
The evidence is that on December 19, 1986 about 9:30 p.m. the four complainants were accosted by a group of males, some with guns, as the complainants left 395 Fountain Avenue, a building in the Cypress Housing Project in Kings County. Two of the complainants were shot and all four had their caps taken. Attempts were also made to take the coats of the complainants. At trial all three of the defendants tried to establish that they were not present during the encounter.
The four complainants testified at trial and three of them identified defendant. Charles Washington, Dwayne Washington and Jimmy Washington testified that on January 10, 1987, they separately picked defendant Allah out of a lineup. In addition, they identified defendant in court. Jimmy Washington also testified that on the night of the incident he had returned to the area with the police and identified two persons involved in the incident. Pursuant to CPL 60.25 a housing police officer testified that it was Robinson and Thompson that Jimmy Washington had pointed out on December 19, 1986. Complainant Nicholson could not identify any of the persons on trial.
In addition to the complainants, four other eyewitnesses testified. Linda Robinson, the mother of codefendant Cory Robinson, testified on her son’s behalf. She testified that her son was home at 1230 Sutter Avenue (a building in the Cypress Housing Project) when she arrived from work at 6:00 or 6:30 p.m. on December 19, 1986. He remained there until she went to a neighbor’s apartment around 8:00 or 8:45 p.m. While she was visiting her neighbor, her son came to the apartment and asked for money to buy a hero sandwich. She went home and gave him the money and he left the apartment. It was close to 10:00 p.m. when she gave him the money. Linda Robinson also testified that she had never seen defendant in the company of her son.
Two witnesses, Charlie Mae Wilson and Curtis Collymore, were called by defendant Allah. Both testified that defendant was not present during the encounter. In addition, both testified that codefendants Robinson and Thompson were not present.
It was the testimony of Rachel Hilliard, called by codefendant Thompson, which demonstrated most clearly the conflict between the defenses of defendant Allah, on the one hand, *399 and codefendants Thompson and Robinson on the other by placing defendant at the scene while excluding the codefendants from the encounter. She testified that after hearing gunshots, she looked out her window and saw defendant running with a gun in his hand. Hilliard also testified that she did not see codefendants Thompson or Robinson. She testified further that years ago, she and defendant had exchanged words on numerous occasions. In addition, Hilliard testified that several years ago she had been beaten by friends of defendant. No further explanation of the exchange of words or beating was given.
After the charge to the jury, counsel for codefendant Robinson stated that he had a medical emergency involving his right elbow and that he was going to visit a doctor. He stated that counsel for codefendant Thompson would assume the representation of his client with his client’s consent. During the temporary representation, the counsel for Robinson continued, "he may consent to the readback, the delivery of evidence to the jurors and do anything that I might have done if I were here.”
Immediately thereafter, counsel for defendant Allah informed the court that he would be out-of-town from 9:00 p.m. that night until the following Monday, and that counsel for Thompson, as well as counsel for Robinson when present, would also represent defendant. Specifically, counsel for defendant stated that the other two attorneys could "consent to read backs, presentation of evidence, et cetera, and my client Iraefbey Allah has also consented.” Counsel for defendant then asked his client if he consented to that on the record and defendant answered, "Yes.”
No reason for the absence of defendant’s attorney was stated on the record. Without inquiry or admonition by the court of any potential or actual conflict from the joint representation, defendant Allah consented to representation by counsel for the codefendants. During the period of joint representation by counsel for the codefendants, the jury received "clarification” of the elements of robbery and assault, as well as additional instructions from the court on the meaning of "acting in concert.”
The jury rendered a verdict acquitting the codefendants of all charges, and convicting defendant Allah of five counts of robbery in the first degree and one count of criminal possession of a weapon in the second degree. The Appellate Division *400 unanimously affirmed, holding that the absence of defendant Allah’s counsel and the joint representation did not deprive defendant of his fundamental right to the effective assistance of counsel (see, 177 AD2d 490). The Chief Judge of this Court granted defendant’s application for leave to appeal.
The principal issue on this appeal is whether defendant was afforded the effective assistance of counsel. Defendant argues that defense counsel’s absence during jury deliberations through the verdict, and joint representation by counsel for Thompson and Robinson, deprived him of his fundamental right to the effective assistance of counsel because there was an actual conflict of interest. We agree.
Where codefendants are represented by the same attorney, the trial court must inquire, on the record, whether each defendant has an awareness of the potential risks involved in that course and has knowingly chosen it (see, People v Macerola, 47 NY2d 257, 263; People v Gomberg, 38 NY2d 307, 313-314). Only after sufficient admonition by the trial court of the potential pitfalls of joint representation, can it be said that a defendant’s right to the effective assistance of counsel is adequately safeguarded (see, id.). If such admonition appears on the record, appellate courts can determine whether a defendant’s decision to pursue joint representation is an informed one (id.).
Where joint representation is undertaken at the crucial stage of jury deliberations, an actual conflict, such as that existing here, must be brought to the attention of a defendant so that any consent to that representation is an informed consent.
The People argue that the joint representation of defendant by counsel for the codefendants presented no conflict sufficient to violate defendant’s right to the effective assistance of counsel. However, the record reveals that an actual conflict existed. The key witness for codefendant Thompson, who had previously been beaten by friends of defendant, testified that she observed defendant running with a gun in his hand. The witness also testified that she did not see codefendants Thompson or Robinson at the crime scene. Thus, that witness implicated defendant while establishing a defense for codefendants Thompson and Robinson. As such, defendant’s right to receive assistance from an attorney whose undivided responsibility is to that defendant alone was impaired by joint representation by counsel for the codefendants (see, People v Macerola, 47 NY2d 257, 264, supra).
*401 Moreover, the record reveals no explanation for defense counsel’s absence. Nor does the record indicate that the court, by proper inquiry, took the necessary precautions to ensure that the defendant perceived the potential risks inherent in joint representation by counsel for the codefendants. Thus, we cannot conclude that defendant’s decision to pursue joint representation in this case was an informed one. Respondent’s argument that defendant consented to the joint representation in open court is unavailing.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Acting Chief Judge Simons and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.