■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEAH BUNDY, Appellant. [654 NYS2d 108] —Judgment of the Supreme Court, New York County (Richard Lowe, III, J.), rendered February 26, 1991, convicting defendant, after trial by jury, of criminal possession of a controlled substance in the first, second, third (two counts) and fourth degrees, criminal possession of a weapon in the third degree (three counts) and criminal use of drug paraphernalia in the second degree, and sentencing her to concurrent terms of 15 years to life on the first-degree drug possession count, three years to life on the second-degree drug possession count, one to three years on the remaining drug possession counts and the weapon counts, and one year on the drug paraphernalia count, is affirmed.

On January 9, 1990 at about 11:30 P.M., the police responded to a radio call reporting a man shot in apartment 49 at 109 West 112th Street. Knocking at the door of apartment 49, they received no response, but the co-defendant Christopher Clemente, in apartment 48 next door, called out: "Who is it?" When they responded that it was the police and asked him to open the door, they heard the sounds of running and glass breaking in the apartment. Some officers went to the roof and some to an alley at the side of the building and saw various objects being thrown from the window of apartment 48. Thus, officers recovered a loaded and operable Glock gun, 20 clear plastic bags containing a total of 1,968 crack-filled vials, a brown bag containing a rock of crack and 59 vials with crack in them, plastic bags containing empty vials and vial tops and a scale used to weigh narcotics.

About five minutes after this, co-defendant Clemente opened the door to the apartment and the officers there saw defendant

at the end of the apartment hallway. In searching the apartment for a victim, the officers found a loaded and operable machine pistol with a defaced serial number. In a furnished bedroom, there was over $11,000 in mostly small bills in an open drawer, a plastic bag containing 214 crack-filled vials on the floor and a number of items, including empty vials, on a table. In a rear bedroom, a bullet-proof vest, a holster, and a bag of ammunition were recovered from a window sill. In the hallway's front closet, there were two plastic bags containing rock-form crack.

Defendant and the dissent concede that there was legally sufficient evidence to support her conviction of the fifth count of criminal possession of a controlled substance in the fourth degree for possessing the 214 vials of crack in open view in the furnished room since the "drug factory" presumption was applicable to these 214 vials of crack (*see*, Penal Law § 220.25 [2]). She challenges the sufficiency of the proof as to her constructive possession of the contraband charged in the other counts for which she was convicted, and contends that her conviction on *all* the counts was against the weight of the evidence. "A verdict is supported by sufficient evidence as long as 'there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence* * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged.' (*People v Bleakley*, 69 NY2d 490, 495.) That competing inferences could be drawn from the evidence does not render the proof of guilt insufficient. 'A choice between competing inferences, as a choice between competing facts, is available to the trier of facts [as] long as the one arrived at is found beyond a reasonable doubt.' (*People v Castillo*, 47 NY2d 270, 277.)" (*People v Steinberg*, 170 AD2d 50, 65, *affd* 79 NY2d 673.)

This *same* appellate standard for reviewing sufficiency of the evidence applies on a case where the evidence is wholly circumstantial, and not the standard "available only to a trier of fact: whether the circumstantial evidence excluded 'to a moral certainty' every reasonable hypothesis of innocence. A court reviewing legal sufficiency of the trial evidence must instead determine whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People (*People v Wong*, 81 NY2d 600, 608; *see also, People v Bleakley*, 69 NY2d 490, 495)." (*People v Williams*, 84 NY2d 925, 926.)

Defendant concedes the legal sufficiency of the evidence proving her guilt of criminal possession of a controlled substance in the fourth degree for possessing the 214 vials of crack in a clear plastic bag on the floor of the furnished bedroom, but contends her conviction on this count was against the weight of the evidence.

Initially, we note that the IAS Court properly granted defendant's motion to suppress her statement. In response to an officer's question as to whether she lived in the apartment, defendant replied: "Yes. Get the fuck out". Defendant had not yet been given *Miranda* warnings at that time. However, the other evidence of her possession of all the contraband was compelling, even in the absence of this admission.

Penal Law § 220.25 (2) provides, in pertinent part: "The presence of a narcotic drug * * * in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found".

While the defendant concedes that the "drug factory" presumption is applicable to "this parcel of drugs", the circumstances surrounding the discovery of the drugs, paraphernalia and weapons also support the application of the "drug factory" presumption to almost all of the contraband recovered herein. Thus, the evidence indicated that this apartment, except for the one furnished bedroom, was not fit for residency. The only furniture in the apartment, except for the furnished bedroom, was a chair in the rear bedroom. The kitchen floor had a "big" hole in it. The defendant, when first seen by the officers, was standing at the end of the hallway, near the doorway of the furnished bedroom, where the 214 vials were in a clear plastic bag on the floor, in plain view, along with $11,404 in the open top drawer of a night table. In the rear bedroom, there was a bullet-proof vest, a holster and a bag of ammunition on a window sill. Also in an empty bedroom, the police recovered the operable and loaded machine pistol. While the co-defendant was observed with cut and bloody hands and an officer saw a "large" and "muscular" figure at one of the windows about 10 seconds after the last object was thrown from the apartment, leading to the surmise that co-defendant was throwing contraband out of the window, the condition of the apartment and defendant's position when the police entered left no doubt that she was aware of the fact that he was discarding this

contraband, and, therefore, was "in close proximity" to the loaded Glock gun, the 20 clear bags containing 1,968 crack-filled vials, the brown bag containing a rock of crack and 59 vials with crack in them, the plastic bags containing empty vials and vial tops, and a scale used to weigh narcotics, which all obviously were "in open view" when thrown from the window. Thus, we have previously noted: "There was no direct evidence that defendant had been in the dining room, but the 'drug factory' presumption (Penal Law § 220.25 [2]) *does not require proof that a defendant be found in the same room as the narcotics* (*see, People v Daniels*, 37 NY2d 624; *People v Diaz*, 160 AD2d 435, *lv denied* 76 NY2d 985)." (*People v Maldonado*, 189 AD2d 737, 738, *lv denied* 81 NY2d 1016 [emphasis added].)

In any event, even assuming that the "drug factory" presumption did not apply, the evidence clearly established that defendant constructively possessed all the contraband found in the apartment or thrown out the window upon the arrival of the police. The proof of defendant's exercise of dominion and control over the contraband was not precluded by proof that co-defendant and his brother also participated in control over the apartment and its contents. "Possession if joint is no less possession. The circumstances established the operation of a narcotics 'factory', and the inference that the tenant, as well as all those found in the apartment, were engaged in the illicit enterprise, was irresistible and therefore entitled * * * the jury to find the defendant guilty as it did." (*People v Tirado*, 38 NY2d 955, 956.)

Not only was defendant present in a basically "bare" apartment obviously used as a drug factory, but she clearly had been in the apartment before. The police found on the floor of the furnished bedroom a photograph of defendant in which defendant was *not* wearing the "dark blue sweatshirt, blue jeans and black shoes" which she had been wearing at the time of her arrest. On the bottom of the front of that photo, Sgt. Williams testified was written, "Leah B. being a bitch". He also testified that the clothes that Leah Bundy was wearing in the photograph *taken in that apartment* were *not* the *same* clothes she was wearing the night she was arrested. The background of the picture showed a wall molding and a box spring with a pattern on it, which *matched* the molding and the box spring in the apartment's furnished bedroom. Also, the photograph depicted defendant holding a pink blanket which was seen by the police in the apartment the night of the arrest. This photograph demonstrated that defendant was not a casual visitor but had been present in the apartment on a previous occasion, as the prosecutor argued in his summation.

Thus, the evidence was legally sufficient to prove defendant constructively possessed all the contraband, and the jury's verdict was not against the weight of the evidence (see, People v Chalmars, 176 AD2d 239, 240, lv denied 79 NY2d 854). The jury reached the only reasonable conclusion based on the evidence, i.e., that defendant constructively possessed the contraband found inside and just outside the apartment as one of the participants in the activities in the narcotics factory in the apartment.

Defendant's claim that her sentence for criminal possession of a controlled substance in the first degree was unconstitutional because it constitutes "cruel and unusual" punishment is unpreserved for review, since defendant moved at sentencing only to have the conviction on this count vacated, not on this ground but in the interests of justice. In any event, defendant's crime was a serious one and while defendant claims this was her first criminal conviction, in 1986 she was convicted in the Bronx for introducing contraband into prison (Penal Law § 205.20 [1]), and, after another arrest for drug possession, she failed to return to court, a bench warrant was issued and she was returned only upon her arrest in the instant case. Furthermore, the record at the sentencing shows that at sentencing the prosecutor stated that "one of the things that our office found out about this defendant but was unable to present at trial and might have presented at trial had the defendant chosen to take the stand, was that one of the beepers * * * found in that apartment * * * was traced to a person named Leah Blake" who lived at the same address that defendant gave as her own.

We have examined defendant's remaining contentions and find them to be without merit. Concur—Sullivan, J. P., Milonas, Nardelli and Williams, JJ.

Ellerin, J., dissents in a memorandum as follows: On January 9, 1990, at about 11:30 P.M., police officers responded to a radio run of a person shot at Apartment No. 49 at 109 West 112th Street. When the officers arrived, they knocked on the door of No. 49 but received no answer. However, a male voice coming from Apartment No. 48 called out, "Who is it?" An officer responded that it was the police and requested that the door be opened. The officers immediately heard sounds of running, banging, and breaking glass coming from No. 48. When some of the officers went to the roof and the rear alley to prevent an escape, they saw bags of drugs, empty vials, a scale and a gun being thrown from one of the apartment windows. Shortly after, one of the officers saw a large male figure lean

out of a window which was near the one from which the items had been thrown but which, unlike the other window, was lighted.

About five minutes later, the door to the apartment was opened by codefendant Christopher Clemente. Clemente's hands were bleeding. The defendant, Leah Bundy, was standing at the end of a long hallway leading from the front door to the rooms which made up the rest of the apartment. A search of the apartment revealed a clear plastic bag containing 214 vials later determined to contain crack cocaine lying in open view on the floor of one of the bedrooms, which was lighted and furnished. Also found in a hall closet in the apartment were additional quantities of cocaine, beepers, vials, cash, a bulletproof vest, another gun, a ledger with codefendant's name on it, and several items bearing the name of codefendant's brother, Henry Clemente. Additionally, the police found in the apartment a photograph of defendant inscribed with the comment, "Leah B. being a bitch". It was later discovered that a security gate covering one of the windows in a second, unfurnished and unlighted bedroom was bent back and stained with blood.

Clemente had on his person the keys to the apartment and a beeper similar to others found in the apartment.

On this evidence the defendant was convicted not only of possessing the drugs which were found in open view in the lighted, furnished bedroom, but also of the constructive possession of the drugs, guns, scale and empty vials recovered from the alley as well as the additional contraband found in the hall closet and in the empty bedroom. For these crimes, she is serving an aggregate sentence of 15 years to life in prison.

I find that, except as to the count relating to the drugs which were found in open view in the furnished and lighted bedroom, this evidence was insufficient as a matter of law to sustain the conviction, and would therefore reverse.

First, the only count of this indictment as to which the jury was charged with the "drug factory presumption" of Penal Law § 220.25 (2)* was the fifth, which charged her with possession of the drugs found in open view in the furnished bedroom. As to this count, the defendant does not argue that the evidence was insufficient to sustain the conviction.

---

* "The presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found".

All the other counts charge the defendant with possession of the contraband, i.e., drugs, weapons and drug paraphernalia, thrown from the window of the empty bedroom as well as that found in a hall closet and in the empty bedroom itself. There was no evidence that any of the drugs in these locations were in open view or in close proximity to the defendant and the trial court quite properly did not charge the presumption as to these counts. In spite of this, the majority first attempts to justify its affirmance as to those counts which arose from contraband thrown from the window by subjecting them to the presumption. This would obviously be improper, since the court did not submit these counts on the basis of the presumption and no jury has ever found that the elements of the presumption were satisfied (*see, People v Martinez*, 83 NY2d 26, 35, *cert denied* 511 US 1137). Clearly, whether a statutory presumption is to be applied to a particular defendant is a matter to be decided by a trier of fact (*People v Lynch*, 116 AD2d 56, 60) and not as an afterthought by an appellate court. Moreover, the majority apparently even extends application of the presumption to defendant's convictions for possessing the weapon and drug paraphernalia thrown from the window, though by its express terms the presumption applies only to possession of delineated controlled substances.

In an attempt to sustain the convictions on these counts by way of the drug factory presumption, despite the absence of any evidence in support thereof, the majority is reduced to speculating that the drugs may have been in open view during the moment they were being flung from the window of the unfurnished room and that, even though there is no evidence that defendant was ever in that room, she may have been in close proximity to the drugs at the moment they may have been in open view because five minutes later she was standing in the hallway. Under these circumstances, it is clear why the trial court did not submit these counts on the basis of the presumption, without any objection or request for such submission by the People.

The only theory under which defendant actually was convicted of these counts was constructive possession by reason of her alleged dominion and control over the contraband. However, the evidence set forth to sustain this theory was insufficient as a matter of law.

It is well established that, absent evidence establishing the drug factory presumption, mere presence in an apartment in which drugs are found is not enough to sustain a conviction demonstrating the defendant's dominion and control over the

apartment and its contents (*People v Headley,* 74 NY2d 858; *People v Rivera,* 176 AD2d 498, *lv denied* 79 NY2d 831; *People v Dawkins,* 136 AD2d 726; *People v Ortiz,* 126 AD2d 677, 678, *lv denied* 70 NY2d 652).

In the case at hand, there was no link between defendant and the apartment other than the fact that her photograph, which appeared to have been taken in the same apartment, was found there. Even if the evidence indicated that the photograph belonged to defendant, that would not serve to establish her dominion and control over the apartment and its contents (*see, People v Ortiz, supra* [presence of defendant's passport in a kitchen drawer not enough to show dominion and control]); and, in this case, the evidence indicates that the photograph was more probably the property of the codefendant, possibly her boyfriend, since the descriptive phrase on the photograph, which described her in the third person, was obviously written by someone other than defendant.

In addition to the evidence of the photograph, the People attempt to rely on defendant's knowledge that the premises were a drug factory, as implied by the fact that some of the drugs were in open view, to support the inference that she had dominion and control over the apartment and its contents. However, while the People convincingly argue that the premises were indeed a drug factory, they have provided no evidence demonstrating or even implying that defendant's connection to the premises was that of a participant in the business, rather than merely as a visitor, as would be necessary to establish dominion and control. The People's argument is, thus, no more than an attempt to expand the scope of the statutory drug factory presumption to all of the contraband, including weapons, found in the apartment regardless of where they were found. This is plainly in contravention of the statute.

Clearly this is a far different situation than that in *People v Tirado* (38 NY2d 955, 956), cited by the majority, in which the evidence not only showed that the apartment was used in the drug trade, but that the defendant, the only person charged, was not only present in the apartment along with other people but was also the tenant of record. In sharp contrast, the defendant in this case was not the tenant of record, she did not have the keys of the apartment, no clothing or personal belongings of hers were in the apartment, her handwriting was not on any of the records in the apartment, and there was no evidence that she had ever been seen entering or leaving the apartment prior to the date of her arrest. Thus, the issue is solely whether, viewed in a light most favorable to the People,

the mere presence of her photograph, and the implication that she was in the apartment once before when it was taken, are enough to support the inference, beyond a reasonable doubt, that she exercised dominion and control over the apartment and its contents. They are not (see, People v Rivera, 176 AD2d 498, 500, lv denied 79 NY2d 831, supra [presence in an apartment to which defendant fled from police of a large number of glassine envelopes bearing same logo as those which defendant just sold not enough to show dominion and control where "(t)here was no evidence that defendant leased the apartment; no keys were found in his possession; no clothes or other property belonging to him were found inside the apartment; no rent receipts, bills or other evidence linked him to the apartment"]). In short, the evidence supported no inference other than that, rather than being a drug dealer herself, defendant was dating a drug dealer. While this may be an inadvisable personal choice, it is not, by itself, evidence of participation in a crime.

Under these circumstances, the evidence was clearly insufficient as a matter of law to demonstrate defendant's possession of any weapons or drugs based on her supposed dominion and control over the apartment and its contents. Since this is the only basis upon which defendant's conviction of all of the counts of the indictment other than the fifth rests, I would reverse.