*788 Rivera, J,
(dissenting). The statutory presumption contained in Penal Law § 220.25 (2) was appropriately dubbed the “drug factory presumption,” because it “was intended to allow police in the field to identify potentially culpable individuals involved in a drug business, under circumstances that demonstrate those individuals’ participation in a drug operation” (People v Kims, 24 NY3d 422, 432-433 [2014], citing Mem of St Commn of Investigation, Bill Jacket, L 1971, ch 1044). Recognizing the “fairly common situation” where “[t]he occupants of such ‘factories,’ who moments before were diluting or packaging the drugs, usually proclaim their innocence and disclaim ownership of, or any connection with, the materials spread before them” (id. at 433, citing Mem of St Commn of Investigation, Bill Jacket, L 1971, ch 1044 at 4), “the drafters of the statute also sought to address the difficulty of prosecuting persons other than the owner or lessee of the premises,” by equating an individual’s close proximity to drugs in a drug sale operation with that person’s actual possession of a controlled substance (id.). Nevertheless, the majority ignores the intention of Penal Law § 220.25 (2) and construes the statute broadly to apply where the evidence of a drug business is tenuous and defendant’s participation in a drug sale operation is lacking.
“We have long recognized that statutory presumptions are without validity unless the probabilities based on experience and proof justify them” (Kims, 24 NY3d at 435 [internal quotation marks and citations omitted]). Where facts “lead to a conclusion counterintuitive to the probabilities to be drawn from common experience, the [drug factory] presumption has no place” (id. [internal quotation marks and citation omitted]). According to the statute, the presumption applies if there exist “circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare [that substance] for sale” (Penal Law § 220.25 [2]). Those circumstances are lacking here.
When the police entered the apartment they failed to discover sale-related items associated with the drug trade. Unlike other cases where the drug factory presumption has been applied, here, for example, there were no guns or other weapons, no cache of money, no drug mixing agents, and no scale to weigh drugs for packaging, typical of a drug sale enterprise (see People v Faulk, 126 AD3d 564, 564 [1st Dept 2015], lv denied 25 NY3d 1071 [2015] [drug factory presumption applied where defendant had close proximity to “cocaine, crack pipes and a scale with cocaine residue”]; People v Hyde, 302 AD2d 101, 105 [1st Dept 2003], lv denied 99 NY2d 655 *789 [2003] [drug factory presumption applied where there were drugs, drug paraphernalia and “a loaded gun in an open bag”]; People v Bundy, 235 AD2d 334, 337 [1st Dept 1997] [drug factory presumption applied where defendant was in close proximity to a “loaded Glock gun, the 20 clear bags containing 1,968 crack-filled vials, the brown bag containing a rock of crack and 59 vials with crack in them, the plastic bags containing empty vials and vial tops, and a scale used to weigh narcotics”], affd 90 NY2d 918 [1997]; People v James, 151 AD2d 606, 606-607 [2d Dept 1989] [drug factory presumption applied where there were “scales, two heat sealers, numerous empty vials and a large amount of cash”]).
The items the police found in this case — six dime bags of crack cocaine and 50 unused empty ziplock baggies on the kitchen counter, and a razor blade and loose cocaine on the floor — are insufficient to support the conclusion that the defendant was a participant in a drug sale enterprise because the items found may also be evidence of personal drug use. In fact, the apartment tenant and defendant’s former companion testified at defendant’s trial that the drugs were hers alone, she was hiding them from defendant, and, at the time the police entered, she was “undecisive” about what she would do with the drugs in the future, but that she would possibly consume some of the cocaine. This is not to say that a claim of personal use forecloses the People’s reliance on the drug factory presumption, because where “probabilities based on experience and proof justify” the presumption, the presumption applies (Kims, 24 NY3d at 435).
However, this Court may not expand the reach of the drug factory presumption beyond its intended legislative purpose {see McKinney’s Cons Laws of NY, Book 1, Statutes § 94, Comment [“A statute should not be extended by construction beyond its express terms or reasonable implications of its language”]). To ensure proper adherence to the statutory goal, there should be a sufficient nexus between the legislatively identified problem and those persons subjected to the statutory presumption. No such nexus exists on the facts presented here where the common indicia of a drug factory operation is lacking, and where the facts do not discount intended personal use of the drugs. Thus, the People were required to carry their usual burden of establishing beyond a reasonable doubt that the defendant was in possession of the contraband. They failed to do so and, therefore, the trial court should not have relied on the statutory presumption.
*790 Defendant also presents a meritorious claim of ineffective assistance of counsel. In my opinion the majority’s rejection of this claim is based on a flawed analysis for two reasons. First, the majority relies on an overly burdensome standard in assessing whether counsel was ineffective. Under our State Constitution a defendant must demonstrate that counsel failed to provide meaningful representation based on the totality of the representation (People v Baldi, 54 NY2d 137, 147 [1981]). A defendant does not have to establish prejudice, as is required under the federal standard (see People v Caban, 5 NY3d 143, 155 [2005] [“Our state standard of meaningful representation, by contrast, does not require a defendant to fully satisfy the prejudice test of Strickland” (internal quotation marks omitted)]). Therefore, the proper standard in deciding defendant’s case is not whether he was prejudiced by the failure to testify before the grand jury, as the majority asserts (majority op at 787), but rather did defense counsel’s failure to facilitate defendant’s intention to testify constitute less than meaningful representation.
The majority applies prior cases of this Court which impose a prejudice requirement on an ineffectiveness claim involving a defendant’s right to testify before a grand jury (majority op at 787). However, there is no legal or practical basis to reject our well-established ineffectiveness standard for one class of deficient representation claims. There is nothing insignificant about these claims that warrants differential, and more burdensome, treatment than any other ineffective assistance of counsel claim. This Court has stated repeatedly that the right to testify before a grand jury is critical to the defendant. Although not a constitutional right, we have explained that the defendant, via statute, still has the right “to appear at this critical accusatory stage to offer testimony that may affect the Grand Jury’s consideration of the otherwise exclusive, ex parte presentment of evidence by the prosecution” (People v Evans, 79 NY2d 407, 413-414 [1992]). A defendant’s ability to testify at a grand jury proceeding is that individual’s “singular incursion on the prosecutor’s otherwise exclusive stronghold” (id. at 414). Recently the Court has reaffirmed the significance of a defendant’s opportunity to testify at grand jury proceedings and held that this right “must be scrupulously protected” (People v Brumfield, 24 NY3d 1126, 1128 [2015], quoting People v Smith, 87 NY2d 715, 721 [1996]). Apparently, according to the majority such protection does not extend to one’s own lawyer.
*791 Given these considerations we should not follow cases that deviate from our constitutional standard. Stare decisis is not meant to fit the Court like a straightjacket and to prevent mistakes from being rectified. While “a court should be slow to overrule its precedents, there is little reason to avoid doing so when persuaded by the ‘lessons of experience and the force of better reasoning’ ” (People v Bing, 76 NY2d 331, 338 [1990], quoting Burnet v Coronado Oil & Gas Co., 285 US 393, 407-408 [1932, Brandeis, J., dissenting]). A defendant’s grand jury claim should be subject to the same standard as other ineffective assistance of counsel claims, such as those based on a lawyer’s failure to investigate and adequately prepare a defense (People v Oliveras, 21 NY3d 339, 348 [2013]), failure to object to prosecutorial misconduct and inflammatory summation remarks (People v Wright, 25 NY3d 769 [2015]), failure to assert a statute of limitations defense to a charge (People v Turner, 5 NY3d 476 [2005]), failure to consider proper criminal procedure and evidentiary law (People v Oathout, 21 NY3d 127 [2013]), or failure to ensure that in counsel’s absence defendant had adequate, and non-conflicted, representation (People v Allah, 80 NY2d 396 [1992]).
The second reason that the majority’s analysis fails is that, assuming, arguendo, a determination whether to have a defendant testify before the grand jury is a matter solely within the professional discretion of a defense attorney, here defendant’s lawyer never discussed the matter with defendant. Thus, counsel could not have made an informed choice regarding this critical question. Indeed, counsel cannot define a strategy regarding whether a defendant should testify without reviewing the potential testimony with the client (cf. Oliveras, 21 NY3d at 348 [“This is not simply a case of a failed trial strategy. Rather, this is a case of a lawyer’s' failure to pursue the minimal investigation required under the circumstances” (citations omitted)]). Without such minimal effort defendant’s counsel could not consider, or even know, the facts and risks associated with defendant’s testimony, nor fully assess the advantages and disadvantages of whether it was in defendant’s interest to appear before the grand jury. Under these circumstances counsel did not provide meaningful representation.
For the reasons stated above, I dissent.
*792 Judges Pigott, Abdus-Salaam and Fahey concur; Judge Rivera dissents in an opinion; Chief Judge DiFiore and Judge Garcia taking no part.
Order affirmed.