People v Everson (2024 NY Slip Op 04013)

People v Everson

2024 NY Slip Op 04013

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, BANNISTER, DELCONTE, AND HANNAH, JJ.

513 KA 23-00550

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JAMES EVERSON, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (DAVID D. BASSETT OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered July 15, 2021. The judgment convicted defendant upon a jury verdict of murder in the second degree and criminal possession of a weapon in the second degree (four counts). 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) and four counts of criminal possession of a weapon in the second degree (§ 265.03 [1] [b]; [3]) arising out of a drive-by shooting of the victim. We affirm.
Defendant's contention that County Court failed to conduct a sufficient inquiry into the People's readiness as directed by CPL 30.30 (5) is not preserved for our review inasmuch as defendant did not object to the sufficiency of the inquiry (see People v Hardy, 47 NY2d 500, 505 [1979]; see generally People v Wills, 224 AD3d 1329, 1330 [4th Dept 2024], lv denied 41 NY3d 1005 [2024]).
We reject defendant's contention that the court erred in admitting evidence of prior violence between feuding groups of individuals who reside in the vicinity of the park where the shooting occurred, as well as evidence that defendant and his codefendant were affiliated with one of those groups. It is well settled that "[e]vidence regarding gang activity can be admitted to provide necessary background, or when it is 'inextricably interwoven' with the charged crime[ ], or to explain the relationships of the individuals involved" (People v Kims, 24 NY3d 422, 438 [2014]; see People v Tatum, 204 AD3d 1400, 1402 [4th Dept 2022], lv denied 38 NY3d 1074 [2022]). Here, the testimony regarding defendant's affiliation with certain individuals provided necessary background information to explain the relationship of defendant to his codefendant and defendant's motive for shooting from a moving car into a crowd of people in the park (see People v Savery, 209 AD3d 1268, 1269 [4th Dept 2022], lv denied 39 NY3d 1075 [2023]), and we further conclude that the prejudicial effect of that testimony did not outweigh its probative value (see People v Haygood, 201 AD3d 1363, 1364 [4th Dept 2022], lv denied 38 NY3d 951 [2022]).
We also reject defendant's contention that the court erred in refusing to sever his trial from that of his codefendant. "The decision to grant or deny a separate trial is vested primarily in the sound judgment of the [t]rial [j]udge, and defendant['s] burden to demonstrate abuse of that discretion is a substantial one" (People v Mahboubian, 74 NY2d 174, 183 [1989]). Moreover, "[j]oint trials are preferred where, as here, the same evidence will be used and the defendant and codefendant[ ] are charged with acting in concert . . . , and severance is not required solely because of hostility between the [defendants], differences in their trial strategies or inconsistencies in their defenses" (People v Rideout, 177 AD3d 1377, 1378-1379 [4th Dept [*2]2019], lv denied 35 NY3d 973 [2020] [internal quotation marks omitted]). Contrary to defendant's contention, the codefendant's counsel did not act as a second prosecutor because, although he emphasized the People's evidence against defendant on summation, "[he] did not elicit any new evidence against the defendant that his jury would not otherwise have heard had he been granted a separate trial" (People v Bostic, 217 AD3d 678, 680 [2d Dept 2023], lv denied 41 NY3d 964 [2024]; see People v Osborne, 88 AD3d 1284, 1285 [4th Dept 2011], lv denied 19 NY3d 999 [2012], reconsideration denied 19 NY3d 1104 [2012]; cf. People v Cardwell, 78 NY2d 996, 998 [1991]).
We also reject defendant's contention that he was denied a fair trial by prosecutorial misconduct, including the prosecutor's references to the musical West Side Story in her opening statement and the quality of the police investigation in her summation. The challenged comments were not so egregious as to deprive defendant of a fair trial (see People v Melendez, 11 AD3d 983, 984 [4th Dept 2004], lv denied 4 NY3d 888 [2005]; People v White, 291 AD2d 842, 843 [4th Dept 2002], lv denied 98 NY2d 656 [2002]) and, further, "the court alleviated any prejudice arising from the prosecutor's comments and summation by instructing the jury that the comments and summations of the prosecutor and defense counsel do not constitute evidence" (People v Williams, 28 AD3d 1059, 1061 [4th Dept 2006], affd 8 NY3d 854 [2007]).
Contrary to defendant's contention, we conclude that the sentence is not unduly harsh or severe.
Finally, we have reviewed defendant's remaining contentions and conclude that none warrants modification or reversal of the judgment.
All concur except Hannah, J., who dissents and votes to reverse in the following memorandum: I respectfully dissent because I believe that severance was compelled in this case and thus that defendant is entitled to a new trial. Severance of criminal trials that could otherwise be joined is rooted in the fundamental concern that a defendant may be unduly prejudiced by a joint trial (see CPL 200.40 [1]). The determination whether to sever permissively joined trials requires, essentially, a balancing of judicial economy on the one hand and a defendant's right to a fair trial on the other (see People v Mahboubian, 74 NY2d 174, 183 [1989]). Although typically left to the discretion of the trial court, the Court of Appeals has "set forth a two-part test for determining whether severance is required," holding that " 'severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt' " (People v Cardwell, 78 NY2d 996, 997-998 [1991], quoting Mahboubian, 74 NY2d at 184).
The first part of that test is satisfied here. At trial, it was alleged by the prosecution that three individuals were riding in a vehicle, that two of those persons fired gunshots from the vehicle, and that the gunshots killed the victim. The third person in the vehicle (eyewitness) was called as a prosecution witness and accused defendant and his codefendant of being the two shooters. The core of defendant's presentation to the jury was that he was not one of those two shooters because the prosecution had, his counsel argued on summation, failed to establish either that he was present in the vehicle or, even if present, that he was one of the two persons alleged to have fired from it. In stark contrast, the core of the codefendant's presentation was, as explicitly synthesized during closing argument, that defendant was one of the two shooters, along with the eyewitness. One cannot both be and not be one of the shooters, and thus the core of each defense stood, axiomatically, in irreconcilable conflict. In one case defendant was not a shooter and may not have even been present, whereas in the other he was not only present but one of the two persons who shot at the victim. "This was more than complete disagreement on some factual detail, or even some peripheral aspect of the case . . . The defenses presented here were antagonistic at their crux" (Mahboubian, 74 NY2d at 185-186). The second part of the test, however, requires a deeper look into the circumstances of the case.
Here, the People most directly established defendant's guilt through the testimony of the eyewitness who, if credited, established defendant's identity as one of the shooters. Understandably then, discrediting the eyewitness became a central focus of defendant's defense at every stage—through pretrial motions, cross-examination, trial motions, and closing argument. At each step, defendant attempted to establish that the eyewitness was not to be believed based [*3]on his history of bad acts; his evasiveness and untruthfulness when speaking to the police; and discrepancies in his various statements to the police, his testimony before the grand jury, and his testimony at trial.
Interjected into this otherwise classic battle over witness credibility, however, was the codefendant's defense. Despite defendant's pretrial motions, cross-examination of prosecution witnesses, and preparations for closing argument all aimed at discrediting the eyewitness, at the end of trial, the codefendant's counsel stood before the jury and exclaimed during his own closing argument that the jury knew—or ostensibly should have known—"two things for sure about the car, shots came from it and there were two guns." With an equal lack of equivocation, the codefendant's counsel then stated that "we know who one of those persons was that had [a] gun," thereby identifying defendant as one of the shooters. Not only did those explicit, zero-hour statements by the codefendant's counsel sharply undercut defendant's claim of innocence, but they also more specifically undercut his defense against the eyewitness's damning testimony. Rather than posing a simple choice of whether to credit the eyewitness, defendant now had to overcome the accusations of two persons, i.e., the eyewitness and the codefendant, who were now both telling a consistent story insofar as it identified defendant as a shooter. Unlike what would have occurred absent the codefendant's involvement, discrediting the eyewitness's identification of defendant as a shooter now required that the jury discredit both the eyewitness and the codefendant—a person defendant lacked the ability to cross-examine—and overlook the fact that defendant apparently could not get his own story to match those of either of the other two people in the car. In short, the unambiguous accusations from the codefendant on summation not only provided, in effect, a third-party endorsement of the People's case against defendant, but it also served to undermine a lynchpin of defendant's defense—that the eyewitness was incredible—by presenting a second voice, independent of the People's case, that specifically endorsed the eyewitness's identification of defendant.
Under the circumstances of this case, I believe that the irreconcilable conflict between defendant and the codefendant, in light of the role that the eyewitness's credibility played and the way in which that conflict impacted how the jury would view the credibility of his testimony, created a significant danger that this conflict alone permitted the jury to infer that defendant was one of the shooters, thus inferring his guilt (see Cardwell, 78 NY2d at 997-998). Indeed, because County Court refused to sever defendant's trial from that of the codefendant, the jury was presented with two defendants who were not telling consistent stories, while also being presented with a prosecution witness—the only person other than the two defendants who was inside the car—whose testimony both defendants attempted to claim was incredible. This situation, as perhaps reflected in the verdict, created a "significant possibility that the jury unjustifiably concluded by virtue of the conflict itself that both defenses were incredible and gave undue weight to the government's evidence," discrediting both defendant and the codefendant due to the finger-pointing between them and instead lending greater weight to the eyewitness presented by the People (Mahboubian, 74 NY2d at 186).
Although the majority notes that the codefendant did not elicit new evidence against defendant that the jury would not have otherwise heard in a severed trial, I disagree with that characterization. Initially, the above two-part analysis articulated by the Court of Appeals speaks to the conflict between "each defense" (id. at 184), not the way in which a codefendant has elicited new evidence not otherwise brought forth by the People (see Cardwell, 78 NY2d at 997-998; Mahboubian, 74 NY2d at 184). Although certainly a reason for which severance may be compelled, I do not view the Mahboubian standard as requiring a codefendant's defense to conflict in any particular way or to present such conflict by any particular means, so long as the conflict creates the sort of "significant danger" the analysis contemplates (74 NY2d at 184). In any event, I believe that the closing argument of the codefendant's counsel in fact did reveal new information when viewed in light of the credibility battle between defendant and the eyewitness. Prior to the codefendant's closing argument, testimony reflected that the eyewitness's accusation against defendant was his and his alone. Until closing argument, the jury did not know that the codefendant would adopt that allegation. Although the codefendant's endorsement of the identification of defendant was not a new piece of physical evidence or new testimony, it was certainly a new development that altered the landscape of how the jury would likely consider the credibility dispute before it, and one that would not have arisen in a severed trial.
Consequently, I believe that severance was "compelled" (id.). Inasmuch as I conclude [*4]that none of defendant's contentions requires dismissal of the indictment, I would therefore reverse the judgment of conviction and grant defendant a new trial.
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court