OPINION OF THE COURT
Hancock, Jr., J.
Defendant was convicted by a jury of, among other crimes, one count of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]). In submitting the criminal possession count, the trial court instructed the jury that it could find defendant guilty of either actual possession or constructive possession and that it could find that defendant knowingly possessed the drugs by applying the "drug factory” presumption (see, Penal Law § 220.25 [2]). The jury returned a general verdict of guilty on the criminal possession count without specifying the basis for its finding. On appeal the Appellate Division held that the presumption should not have been charged because the drugs were not in plain view and there was insufficient evidence to evince an intent to engage in a drug factory operation. That Court nevertheless affirmed, applying a harmless error analysis and finding overwhelming evidence to establish defendant’s guilt on the basis of constructive possession.
Leave has been granted primarily to address defendant’s contention that harmless error analysis was improperly employed where the jury returned a general verdict and it was thus impossible to determine whether it convicted defendant under an erroneously submitted theory. Under the particular circumstances in this case, we agree with defendant that harmless error analysis was inappropriate. Accordingly, there should be a reversal and a new trial.
I
Defendant was tried together with codefendant Alphonso Mejie, the lessee of apartment 7B, a one-room apartment with attached kitchen in a building on 88th Street in Queens, where undercover police had purchased cocaine on three occasions: September 13, September 20, and September 29, *30 1988. Codefendant Mejie was charged with criminal sale of a controlled substance in connection with the September 13 transaction. The undercover agent who made the September 13 purchase testified that when he was in apartment 7B he observed Mejie weigh the purchased substance on a scale in the kitchen and wrap it in aluminum foil. The package was exchanged for prerecorded cash.
Another undercover officer testified to making the purchases of cocaine from defendant on September 20 and 29, also from apartment 7B. On the latter occasion, the witness said that he observed, on top of a kitchen cabinet, open tinfoil containing a substance that appeared to be cocaine. A woman who was in the apartment with defendant sealed the substance in the tinfoil and handed it to defendant; defendant, in turn, handed the package to the undercover in exchange for the money.
On September 29, after the drug purchase on that day, the police executed a search warrant for the Mejie apartment, 7B. A search revealed a tinfoil packet of cocaine on the floor in the four-to-five-inch space between a couch and the wall. Inside a closet, the police found a one dollar bill and a five dollar bill, both containing some residue of cocaine. Also in a closet, the police recovered $110 of prerecorded buy money commingled with another $850, all secreted in a child’s pocketbook. An additional $3,630 in cash was discovered in one of the closets. Both defendant and codefendant Mejie, as well as two women, were present in apartment 7B when the warrant was executed. In addition to the sale charges, both defendant and codefendant Mejie were charged and tried for criminal possession of a controlled substance in the third degree — i.e., possessing a narcotic with intent to sell it.
In charging the jury with respect to the possession charges against both defendants, the trial court stated that possession could be actual possession as when the drugs are found on the defendant’s person or in clothing that he is wearing. Alternatively, the court instructed that the possession could be constructive, i.e., possession by a person who, although not in actual physical possession, nonetheless "has both the power and intent to exercise dominion or control over the controlled substance, either directly or through another person or persons”. The court then instructed the jury with respect to the Penal Law § 220.25 (2)[1] presumption, as follows:
*31 "When narcotic drugs are found in open view in a private room other than in a public place under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare such controlled substance for sale, each and every person in close proximity to such controlled substance at the time the drug was found is presumed to know of such possession.
"The term close proximity does not necessarily mean the same room where the drugs are found, so long as this room is either adjacent to or could be observed from the room that the person is located.
"Neither does the term open view necessarily mean the drugs themselves were in plain view or displayed. It is sufficient for the presumption to apply that the drugs were found in a container or package and there was other evidence of preparation of drugs for sales.”
The jury convicted defendant of the September 20 and 29 sales, convicted codefendant Mejie of the September 13 sale and convicted both defendants of criminal possession with intent to sell the drugs found in apartment 7B on execution of the search warrant on September 29.
On appeal, the Appellate Division agreed with defendant that no view of the evidence supported the "drug factory” presumption charge under Penal Law § 220.25 (2). The Court concluded that the tinfoil packet was not found in plain view since it was on the floor in the four-to-five-inch space between the couch and the wall. Moreover, the Court held that even if the packet could be considered to have been in plain view, "the evidence does not show 'circumstances evincing an intent to unlawfully mix, compound, package, or otherwise prepare for sale’ (Penal Law § 220.25 [2])” (People v Martinez, 186 AD2d 151, 152).
Despite its conclusion that the "drug factory” presumption had been erroneously charged, the Appellate Division unani *32 mously held that a reversal was not required on the basis of harmless error. It reasoned:
"The trial court instructed the jury on three theories of possession: actual possession, constructive possession, and the drug factory presumption of possession. Since there is overwhelming evidence that the defendant exercised 'dominion or control’ over the property by a sufficient level of control over the area in which the contraband was found * * * the error is harmless beyond a reasonable doubt. The People established that the defendant sold cocaine from that apartment on two different occasions, including a sale just minutes before the police searched the apartment and arrested the defendant” (id., at 152-153 [citations omitted]).
The Appellate Division rejected defendant’s other contentions including his argument for a reversal because of an unbalanced identification charge. It affirmed defendant’s convictions on all counts. We conclude that because of the defect in the conviction on the criminal possession count, there must be a reversal and a new trial.[2] We do not address defendant’s other contentions of error.
II
It is an established rule of Supreme Court jurisprudence that a general verdict of guilt must be set aside where the jurors in reaching their verdict may have relied on an illegal ground or on an alternative legal ground and there is no way of knowing which ground they chose (see, e.g., Griffin v United States, 502 US 46, 112 S Ct 466, 470-472; Yates v United States, 354 US 298, 311-312; Stromberg v California, 283 US 359, 367-368). Thus, the Supreme Court has consistently vacated general verdicts where one of the choices afforded to the jury was to find guilt on an unconstitutional theory. It has rejected the contention that the verdict should be upheld because the fact finder presumably based it on an alternative constitutional ground (see, e.g., Bachellar v Maryland, 397 US 564, 569-571; Street v New York, 394 US 576, 585-590; Williams v North Carolina, 317 US 287, 291-292). In Yates, the *33 Supreme Court applied this same rationale and set aside a general verdict where one of the bases on which guilt could have been predicated, although not unconstitutional, was nevertheless illegal (see, Yates, supra, at 311-312 [one statutory ground on which jury could have convicted under court’s instructions was time-barred and, therefore, unlawful]). Recently, in Griffin (supra), the Supreme Court reaffirmed the Stromberg/Yates rule that there must be a reversal if a general verdict of guilty may have been based on an unlawful theory. The Griffin Court upheld the conviction, however, drawing a distinction between a case where one of the possible grounds for a verdict was illegal as in Yates or unconstitutional as in Stromberg and the situation where, as in Griffin, one of the jury’s charged options was not supported by sufficient evidence. The Court noted that, as opposed to when the jurors have been given the choice of an illegal option, when they "have been left the option of relying upon a factually inadequate theory [they] are well equipped to analyze the evidence” (Griffin, 502 US, at —, 112 S Ct, at 474, supra).
Although our Court has never applied the precise theory adopted by the Supreme Court in Yates and Stromberg, we have in analogous situations set aside a verdict where there was a possibility that it was based on an illegal ground which had support in the record. Thus, in People v Roberts (72 NY2d 489) where a jury verdict of manslaughter in the first degree could have been based on evidence of strangulation adduced at trial — a theory not presented to the Grand Jury and inconsistent with the allegations in the indictment — we reversed the conviction since a verdict based on strangulation would have violated defendant’s constitutional and statutory right to be prosecuted in accordance with the indictment (see, id., at 497-500; cf., People v Grega, 72 NY2d 489, 496-497 [the companion case decided with People v Roberts, supra]). Similarly, in People v Kaminski (58 NY2d 886), we held that sodomy convictions could not stand where the indictment charged forcible compulsion only by means of physical force but the court erroneously charged that the jury could convict if it found compulsion either from physical force or from threats placing the victim in fear of death or physical injury. People v Grega (supra) illustrates the opposite case. There, the indictment charged defendant with rape and sodomy committed through forcible compulsion consisting of physical force; it made no mention of forcible compulsion by express or implied threats. But the trial court, as in Kaminski, erroneously *34 charged the jury that compulsion could be established by proof of physical force or by proof of express or implied threats. The record showed, however, that the only evidence of compulsion adduced at trial was that caused by physical force; thus the proof did not vary from the allegations in the indictment. We, therefore, reinstated the jury verdict, distinguishing Kaminski in view of the absence of evidence of express or implied threats and noting that if there had been such evidence, defendant’s right to be tried only for indicted crimes might well have been violated (see, Grega, supra, at 496).
Ill
In the case at bar, the Appellate Division held that the jury’s general verdict was invalid since it could not have been known if the result was predicated on the erroneous "drug factory” presumption or on the lawful alternative theory of constructive possession without the aid of the presumption. We believe that this conclusion is compelled under the rationale of the Supreme Court’s decisions in Stromberg and Yates and our holdings in Roberts and Kaminski. The Appellate Division, nevertheless, applied a harmless error analysis and affirmed. Inasmuch as the jury’s verdict may have been predicated on an illegal theory[3] and, therefore, subject to vacatur under Stromberg/Yates, the question is whether the Appellate Division correctly sustained the conviction by reviewing the record and finding "overwhelming evidence that the defendant exercised 'dominion or control’ over the property” (Martinez, *35 supra, at 152-153) and holding the error harmless beyond a reasonable doubt.
We conclude that the doctrine of harmless error was improperly applied. The Appellate Division was not presented with the problem of evaluating a trial error and the likelihood that it may have contributed to a result known to have been reached by the jury (see, e.g., People v Crimmins, 36 NY2d 230, 237-242; Chapman v California, 386 US 18). Here, the result reached by the jury was unknown; i.e., whether its verdict was predicated on the illegally charged presumption or on a finding of constructive possession irrespective of the presumption. The unknown aspect of the verdict involved the identity and legality of the theory that the jury chose for its verdict, not the tainting effect of some trial error on a known result (compare, People v Smalls, 55 NY2d 407, 416-417).[4] Where it is impossible for a reviewing court to determine whether the guilty verdict was founded on an illegal theory, it may not review the evidence under a harmless error analysis and, in effect, assume the jury’s fact-finding function by concluding that the jury must have reached its result on some alternative legal ground (see, People v Diaz, 19 NY2d 547, 549-550 [reversing Appellate Division’s application of harmless error where trial court incorrectly failed to charge that testimony of accomplice required corroboration]; People v Kelly, 302 NY 512, 517-518; see also, People v Gallagher, 69 NY2d 525, 530; People v Minarich, 46 NY2d 970, 971). Indeed, the Supreme Court in Yates specifically rejected a harmless error analysis (see, Yates, supra, at 311-312; see also, Griffin, 502 US, at —, 112 S Ct, at 474, supra [noting that when "jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error”]). Similarly, in *36 People v Kelly (302 NY 512, supra), a case where the trial court delivered both a correct and an incorrect statement of the insanity defense, our Court refused to treat the error as insubstantial, observing:
"It is urged upon us * * * that * * * we should assume that the jurors — each of the twelve of them — followed the court when it was correct and disregarded the charge when it was incorrect * * * [that they] had the wit and ability, with unanimity, to adopt the right one and reject the wrong one. We think the statement of the thought contains its refutation” (id., at 517).
IV
The People, however, advance an argument for upholding the conviction aside from the Appellate Division’s application of harmless error. The argument focuses on the Stromberg/ Yates rule and the holding in Griffin (supra) that a verdict may be upheld when the jurors have been left the option of relying on a factually inadequate theory as opposed to one that is legally inadequate (Griffin, 502 US, at —, 112 S Ct, at 474, supra). Relying principally on People v Grega (supra, at 496-497), in addition to Griffin, they contend that here, as in Grega, there was insufficient evidence to support the verdict on the erroneous theory and that, therefore, it can be concluded that the jury must have based its verdict on a theory for which there was sufficient evidence. Thus, they would distinguish Roberts, Kaminski, Stromberg and Yates where the records contained sufficient evidence on which the jurors could have reached unlawful verdicts.
The argument is not persuasive since Grega and Griffin are not in point; for, under the improper "drug factory” presumption charge as given by the court here, there was evidence to support a verdict on that erroneous theory. Although a requirement for charging the presumption is that the drug be "in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance” (Penal Law § 220.25 [2] [emphasis added]), the charge, in effect, nullified that requirement. The trial court instructed the jury that "the term open view [does not] necessarily mean the drugs themselves were in plain view or displayed”. Thus, the court’s expanded charge permitted *37 the jury to conclude that drugs found in the space between the couch and the wall would satisfy the statute. Moreover, as to the statutory requirement of "close proximity”, the trial court’s charge made the presumption applicable to anyone present in apartment 7B when the warrant was executed. The court told the jury that the "close proximity does not necessarily mean the same room where the drugs are found, so long as this room is either adjacent to or could be observed from the room that the person is located” (emphasis added).
Finally, there was nothing in the charge restricting the evidence of observations or activities — either as to nature or time of occurrence — that the jury could consider as constituting "circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance”. The jury could well have considered as relevant on this issue the evidence of the three drug purchases on September 13, 20 and 29, including the testimony concerning the scales observed in the kitchen on September 13 and the open tinfoil containing what proved to be cocaine observed on a kitchen cabinet at the time of the September 29 purchase. Taking this proof of past activities together with the evidence of the large sums of cash and the additional drugs found in apartment 7B on execution of the search warrant, the jury could have been satisfied that there was enough to evince an intent to operate a "drug factory” under the interpretation of the statute given in the court’s charge. Thus, like Roberts, Stromberg, and Yates, and unlike Grega and Griffin, since there was some evidence to support a verdict on the erroneous basis, there must be a new trial.
In sum, we agree with the Appellate Division that the evidence did not warrant a "drug factory” charge under the statute. But given the court’s expanded charge on the presumption, there is no way of concluding, short of speculation, that the jury did not rely on it. As the Supreme Court observed in Bollenbach v United States (326 US 607), an analogous case where the trial court had mistakenly charged a presumption:
"In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under *38 appropriate judicial guidance, however cumbersome that process may be” (id., at 615).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

. Penal Law § 220.25 (2), in pertinent part, provides: "The presence of a *31 narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found.”

. Because the criminal possession count and the sale counts are factually interrelated, there should be a reversal and a new trial on both the sale and possession counts (see, People v Andujas, 79 NY2d 113, 118, n; People v Kitching, 78 NY2d 532, 539, n 2).

. Contrary to the dissent (dissenting opn, at 39-40), the submission of the "drug factory” presumption as a basis on which the jury could have found defendant guilty gave the jury the choice of convicting defendant based upon an erroneously charged legal theory which should never have been in the case. The trial court committed two errors. First, as the Appellate Division properly held, Penal Law § 220.25 (2) should not have been charged at all since, inter alla, the drugs were not in "open view” or found "under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare [the drugs] for sale”. Additionally, as discussed below in part TV, the presumption as charged by the court did not track the statute but went substantially beyond it and would have permitted the jurors to conclude that the requirements of the statute for finding that defendant was in knowing possession had been met: i.e., that the drugs were found in "open view” and in "close proximity” to defendant under circumstances evincing an intent to prepare them for sale. Thus, it is the unusual combination of these two errors that made it possible for the jury to convict on an erroneous theory and brings the case within the Yates/Stromberg rule.

. The People’s and the dissent’s (dissenting opn, at 38-39) reliance on People v McGee, the companion case to People v Smalls (55 NY2d 407), is misplaced. In McGee, there was no question about the result the jury had reached, i.e., that the defendant was guilty of intending to commit robbery, the predicate felony underlying the felony murder charge. The only question was whether the trial court’s erroneous jury charge on presuming intent (see, Sandstrom v Montana, 442 US 510) required reversal. The Court merely concluded that because McGee did "not involve a trial in which defendant’s intent was made a vital issue to be resolved by the jury, on conflicting evidence”, harmless error analysis was applicable (Smalls, supra, at 417). Here, by contrast, the theory relied on by the jury, which was vital to its conclusion, was unknown. Thus, harmless error analysis is not applicable.