SUPREME COURT OF THE STATE OF NEW YORK
*Appellate Division, Fourth Judicial Department*

**724**

**KA 11-00863**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                     MEMORANDUM AND ORDER

STANLEY R. KIMS, II, DEFENDANT-APPELLANT.

---

DAVISON LAW OFFICE, PLLC, CANANDAIGUA (MARK C. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT.

STANLEY R. KIMS, II, DEFENDANT-APPELLANT PRO SE.

CINDY F. INTSCHERT, DISTRICT ATTORNEY, WATERTOWN (HARMONY A. HEALY OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Jefferson County Court (Kim H. Martusewicz, J.), rendered March 28, 2011. The judgment convicted defendant, upon a jury verdict, of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, criminal possession of marihuana in the second degree and criminally using drug paraphernalia in the second degree (two counts).

It is hereby ORDERED that the judgment so appealed from is modified on the law by reversing those parts convicting defendant of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree and as modified the judgment is affirmed, and a new trial is granted on counts one and two of the indictment.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]) and criminal possession of a controlled substance in the third degree (§ 220.16 [1]). We agree with defendant that County Court erred in charging the jury with respect to the presumption contained in Penal Law § 220.25 (2). That presumption, known as the "room presumption," provides that the presence of, inter alia, a "narcotic drug . . . in open view in a room," under circumstances evincing an intent to sell the drug, "is presumptive evidence of knowing possession thereof by each and every person *in close proximity to such controlled substance at the time such controlled substance was found*" (*id.* [emphasis added]). Thus, "[w]hen narcotics are found in open view in a room on private premises, every person 'in close proximity' to the drugs at the time of discovery is presumed by statute to have knowingly possessed them" (*People v Daniels*, 37 NY2d 624, 630-631; *see People v*

*Coleman*, 26 AD3d 773, 775, *lv denied* 7 NY3d 754).

Our inquiry with respect to Penal Law § 220.25 (2) on this appeal turns on the interpretation of the "close proximity" language of the statute. "Penal statutes 'must be construed according to the fair import of their terms to promote justice and effect the objects of the law' " (*People v Fraser*, 264 AD2d 105, 110, *affd* 96 NY2d 318, *cert denied* 533 US 951, quoting § 5.00; *see People v Miller*, 70 NY2d 903, 906), and it is fundamental that in interpreting a statute we should attempt to effectuate the intent of the Legislature (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583). The "room presumption" was added to the Penal Law in 1971 (*see* L 1971, ch 1044) and, according to its drafters, was intended to address situations in which the police execute a search warrant at a suspected " 'drug factory' " only to find drugs and drug paraphernalia scattered about the room. "The occupants of such 'factories,' who moments before were diluting or packaging the drugs, usually proclaim[ed] their innocence and disclaim[ed] ownership of, or any connection with, the materials spread before them," thus often leaving the police "uncertain as to whom to arrest" (Mem of St Commn of Investigation, Bill Jacket, L 1971, ch 1044, at 4). Moreover, a letter from the chairperson of the State Commission of Investigation, which drafted this statutory provision, further explains that the phrase "in close proximity" was included "to remedy a fairly common situation wherein police execute a search warrant on premises suspected of being a 'drug factory' and find narcotics in open view in the room," and that "[i]t is also intended to include persons who might, upon the sudden appearance of the police, hide in closets, bathrooms or other convenient recesses" (Letter from St Commn of Investigation, Dec. 1, 1971, Bill Jacket, L 1971, ch 1044, at 6-7).

Here, unlike the scenario envisioned by the Legislature, defendant walked out the "front" of his apartment, entered his nearby vehicle and was apprehended almost immediately by parole officers who were investigating whether he resided at that location. Several minutes later, parole officers and police detectives entered defendant's apartment to conduct a warrantless protective search. The officers found another person present in the apartment and discovered a significant amount of cocaine in the rear area of the apartment, and that cocaine was seized in a subsequent search conducted pursuant to a search warrant.

Consequently, based on the facts of this case, we conclude that "defendant was not in 'close proximity to such controlled substance at the time such controlled substance was found' " (*People v Edwards*, 23 AD3d 1140, 1141, quoting Penal Law § 220.25 [2]). We further conclude that the court's error in charging the presumption cannot be considered harmless inasmuch as there is no way to discern whether the jury's verdict convicting defendant of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree, i.e., the only counts with respect to which the presumption was charged, " 'was predicated on the illegally charged presumption or on a finding of constructive possession irrespective of the presumption' " (*id.* at 1142, quoting

*People v Martinez*, 83 NY2d 26, 35, *cert denied* 511 US 1137).  We therefore modify the judgment by reversing those parts convicting defendant of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree, and we grant a new trial on those counts of the indictment (*see People v Rodriguez*, 104 AD2d 832, 834).

We respectfully disagree with our dissenting colleague that we should apply the reasoning of the First Department in *People v Alvarez* (8 AD3d 58, 59, *lv denied* 3 NY3d 670) to the facts of this case.  In *Alvarez*, the First Department concluded that the trial court properly charged the jury with respect to the room presumption where the defendant was not apprehended in the apartment in question and the police did not see him fleeing therefrom.  The trial evidence in *Alvarez*, however, "clearly warranted" the conclusion that the defendant jumped out of the window of the apartment in which the drugs were found, inasmuch as the defendant was discovered injured in the backyard area below the window, and was attempting to flee by climbing a fence (*id.*).

Put differently, the defendant in *Alvarez*, who appears to have been the only occupant of the apartment in which the drugs were located, was found in flight and physically close to a makeshift exit from that apartment.  Here, in contrast to the facts in *Alvarez*, defendant was not in flight from the police; he was apprehended in the driveway outside the apartment several minutes after leaving the apartment in which the drugs were found; and the apartment was occupied by another person.  Given the distance in time and space present here but absent from *Alvarez*, we respectfully disagree with our dissenting colleague that *Alvarez* applies here.

We now turn to defendant's remaining contentions.  Contrary to defendant's contention, the court's pretrial *Molineux* ruling does not constitute an abuse of discretion.  The evidence of defendant's prior drug sales and association with drug dealers was probative of "legally relevant and material issue[s] before the [jury]" (*People v Alvino*, 71 NY2d 233, 242; *see People v Satiro*, 72 NY2d 821, 822; *People v Ray*, 63 AD3d 1705, 1706, *lv denied* 13 NY3d 838; Prince, Richardson on Evidence § 4-510 [Farrell 11th ed]).  In addition, " '[t]he limited probative force of . . . evidence [with respect to defendant's escape from custody] is no reason for its exclusion' " (*People v Roman*, 60 AD3d 1416, 1418, *lv denied* 12 NY3d 928, quoting *People v Yazum*, 13 NY2d 302, 304, *rearg denied* 15 NY2d 679) and, here, the court gave a jury instruction that conveyed the "weakness [of that evidence] as an indication of guilt of the crime[s] charged" (*Yazum*, 13 NY2d at 304).  In any event, any error with respect to the *Molineux* ruling is harmless (*see People v Baker*, 21 AD3d 1435, 1436, *lv denied* 6 NY3d 773; *see generally People v Crimmins*, 36 NY2d 230, 241-242).  We further conclude that " 'any alleged [prosecutorial] misconduct was not so pervasive or egregious as to deprive defendant of a fair trial' " (*People v Szyzskowski*, 89 AD3d 1501, 1503; *see People v Pruchnicki*, 74 AD3d 1820, 1822, *lv denied* 15 NY3d 855).  Contrary to defendant's contention, the court properly refused to suppress

evidence seized from his apartment subsequent to a warrantless protective search (*see People v Lasso-Reina*, 305 AD2d 121, 122, *lv denied* 100 NY2d 595; *see generally People v Bost*, 264 AD2d 425, 426).

Defendant contends in his pro se supplemental brief that the evidence seized from his vehicle and apartment should be suppressed because the parole officers who stopped him in his vehicle acted as conduits for, or agents of, the police. Defendant sets forth a similar contention with respect to the evidence seized from his apartment in his main brief. Even assuming, arguendo, that defendant initially preserved those contentions for our review (*see generally People v Mendoza*, 82 NY2d 415, 428), we conclude that he thereafter abandoned them (*see People v Adams*, 90 AD3d 1508, 1509, *lv denied* 18 NY3d 954; *People v Anderson*, 52 AD3d 1320, 1320-1321, *lv denied* 11 NY3d 733). Defendant's further contention in his pro se supplemental brief that he was denied his right of confrontation with respect to the testimony of a police detective is unpreserved for our review (*see People v Davis*, 87 AD3d 1332, 1334-1335, *lv denied* 18 NY3d 858, 956). In any event, that contention lacks merit. The detective testified that he learned from a confidential informant that defendant's residence might be used as a "stash house," i.e., a place to keep drugs and money and to package drugs for sale. We conclude that such testimony was properly admitted in evidence for the purpose of explaining the actions of the police and the sequence of events leading to defendant's arrest (*see People v Davis*, 23 AD3d 833, 835, *lv denied* 6 NY3d 811; *see also People v Tosca*, 98 NY2d 660, 661). Finally, we conclude that the court properly admitted in evidence the drugs at issue despite the alleged gaps in the chain of custody with respect thereto. "The police provided sufficient assurances of the identity and unchanged condition of the evidence . . ., and thus any alleged gaps in the chain of custody went to the weight of the evidence, not its admissibility" (*People v Kennedy*, 78 AD3d 1477, 1478, *lv denied* 16 NY3d 798; *see People v Hawkins*, 11 NY3d 484, 494).

All concur except SCUDDER, P.J., who dissents in part and votes to affirm in the following Memorandum: I respectfully dissent in part. I disagree with the majority that County Court erred in charging the jury with respect to the presumption set forth in Penal Law § 220.25 (2), and I would therefore affirm the judgment in its entirety.

The record establishes that cocaine and drug packaging paraphernalia were located in plain view in the kitchen of the apartment rented by defendant. The kitchen was in the rear of the apartment, and the police discovered the contraband approximately five minutes after parole officers observed defendant and another person exit the front door of the apartment, which was located in the living room. Defendant's companion admitted that he had purchased drugs from defendant immediately before the two left the apartment together. A third person was in the apartment with defendant and his companion, and that person, i.e., "Chino," appeared to be asleep on the couch in the living room when the police entered the apartment. While he was detained by police in the driveway, defendant yelled to bystanders, "call Chino, call Chino." The record also establishes that the address of defendant's approved residence for parole purposes was

different from the address where the subject contraband was located, and that there were no beds in the two-bedroom apartment where the contraband was located.  In my view, these facts support a determination that the apartment defendant rented was used as a "drug factory operation" (*People v Martinez*, 83 NY2d 26, 29, *cert denied* 511 US 1137), and thus that the court properly instructed the jury that it was permitted to consider whether defendant was in knowing possession of the cocaine at the time it was found.

The court charged the jury that "the presence of a narcotic drug . . . in open view in a room under circumstances evincing an intent . . . to prepare that substance for sale is presumptive evidence of knowing possession of that substance by each and every person *in close proximity to it at the time the substance was found* . . . The People must prove beyond a reasonable doubt that the cocaine was in open view in a room *and that the circumstances were such as to evince an intent . . . to prepare the cocaine for sale* [.  If you so find . . .], then you may, but you are not required to, infer from that fact that each and every person in close proximity to the cocaine at the time it was found was in knowing possession of it" (emphasis added).

In *People v Alvarez* (8 AD3d 58, 59, *lv denied* 3 NY3d 670), the First Department concluded that the trial court properly charged the jury on the presumption contained in Penal Law § 220.25 (2) where the defendant was found outside of the apartment in which the drugs were located and the police deduced that he had jumped out of a window.  In my view, we should apply the reasoning of the *Alvarez* Court to this case.  The cocaine was "in open view in a room . . . under circumstances evincing an intent to unlawfully . . . package or otherwise prepare [it] for sale" (§ 220.25 [2]; *cf. Martinez*, 83 NY2d at 34 n 3).  Further, approximately five minutes before the cocaine was found by the police, defendant was observed leaving the apartment that he rented but may not have used as his residence, and he was in the company of a person who admitted that he had purchased cocaine from defendant.  Thus, the court properly determined that the jury could find that defendant was in close proximity to the cocaine when he was apprehended in his car in the driveway (*see Alvarez*, 8 AD3d at 59).

The majority's reliance on *People v Edwards* (23 AD3d 1140, 1141) is misplaced.  In *Edwards*, the bag of cocaine was not found in a room of the subject apartment but instead was found on the bottom step of a stairway leading to the apartment, and defendant was found in the rear of the apartment.  We concluded that "the controlled substance was not 'in open view in a room' and that, in any event, defendant was not in 'close proximity to such controlled substance at the time such controlled substance was found' " (*id.* at 1141).  If defendant herein had not been observed leaving the apartment less than five minutes before the cocaine was found, I would agree with the majority that *Edwards* is analogous.  However, in my view, the facts presented here support the determination that defendant was in close proximity to the controlled substance at the time it was found and thus that the court properly instructed the jury that it was entitled to infer that

defendant was in knowing possession of the cocaine.

Entered:  June 15, 2012                          Frances E. Cafarell
                                                  Clerk of the Court