=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 155
The People &c.,
        Appellant-Respondent,
        v.
Stanley R. Kims, II,
        Respondent-Appellant.

                Harmony A. Healy, for appellant-respondent.
                Mark C. Davison, for respondent-appellant.

RIVERA, J.:

        On these cross appeals arising from defendant's

convictions for various drug-related crimes, we conclude that

defendant was not within "close proximity" to the drugs found in

his apartment once he exited the premises and entered his car,

- 1 -

where no evidence suggests that he was in immediate flight from the premises in an attempt to escape arrest. Therefore, the trial court erroneously charged the jury on defendant's knowing criminal possession of drugs under the "drug factory" presumption of Penal Law § 220.25 (2). We further agree with the Appellate Division that, under the circumstances of this case, and in accordance with our decisions in People v Martinez (83 NY2d 26, 29 [1993]) such error requires reversal on defendant's convictions for criminal possession of a controlled substance in the first and third degrees, and a new trial ordered on these counts of the indictment. Moreover, upon finding no basis to reverse defendant's convictions for criminal possession of marihuana in the second degree and two counts of criminally using drug paraphernalia in the second degree, we affirm the Appellate Division.

I.

Soon after defendant Stanley R. Kims, II was released on parole for a conviction unrelated to this appeal, Detective James McNitt, a member of the Metro Jefferson Drug Task Force ("Task Force"), received information from an informant that defendant was operating a drug "stash house"[1] on LeRay Street in Watertown, New York. McNitt subsequently confirmed that defendant

---

[1] At trial, McNitt defined a "stash house" as a place to keep drugs and money, and to package drugs for sale.

was leasing the ground floor apartment at the LeRay Street
address and reported this to Patrick Glennon, defendant's parole
officer.

Glennon decided to visit the LeRay Street residence
that same day because defendant had previously reported to parole
authorities that he was living with his family at a different
Watertown address.  Glennon told McNitt that he and several
officers were going to LeRay Street to conduct a "house check"
and asked McNitt to "stay in the area in case they needed any
assistance."  McNitt agreed.  Unbeknownst to Glennon, McNitt took
along several other members of the Task Force and placed the
LeRay Street residence under surveillance while the parole
officers conducted their investigation.

When the parole officers arrived they found defendant's
vehicle parked in the driveway directly in front of the LeRay
Street residence.  They parked outside and after about an hour
Glennon and another parole officer saw defendant and his cousin,
Robert Sawyer, exit through the front door of the house and walk
towards the vehicle. Events then moved quickly. Glennon called
out to defendant. At some point defendant shifted his vehicle
into reverse, but was unable to exit because by then the parole
officers had parked their car behind him.  Glennon observed both
defendant and Sawyer reach into the vehicle's console area,
located between the driver and front passenger seats.  The
officers then drew their guns, and yelled to defendant and Sawyer

to put their hands up and exit the vehicle. The officers surrounded defendant and Sawyer, and were joined by two other parole officers who had been parked near the back of the residence.

After repeated demands by the officers to exit the vehicle, Sawyer finally unlocked the door, and the parole officers handcuffed, frisked and searched defendant and Sawyer. The officers found packages of cocaine on Sawyer and on the ground next to the passenger side door where Sawyer and defendant had been removed from the car. A subsequent search of the vehicle pursuant to a warrant led to the discovery of more cocaine in the console area.

Within minutes of defendant's arrest, McNitt and other members of the Task Force joined Glennon and the parole officers at the front of the residence. As people in the neighborhood began to gather around, defendant repeatedly yelled out to the crowd "Call Chino". McNitt asked defendant if there was anyone in the residence, but defendant looked away and failed to answer. Concerned about potential danger to the officers and the destruction of evidence, McNitt and several of the other officers conducted a protective sweep of the residence, which they entered using defendant's key. Inside, they found one person, Jeffrey Fineout, who was asleep on the living room couch. In response to their questions Fineout told the officers that the residence belonged to defendant.

As they continued the sweep, the officers walked towards the back of the apartment where they observed on the kitchen counter a clear bowl filled with what they subsequently confirmed were several ounces of cocaine.  They also saw scales, a heat sealer, a blender covered in residue, a chemical agent called Inositol Powder used in illegal drug production, glassine envelopes and cookware covered in a white powder residue.

After the officers obtained and executed a search warrant for the apartment, they found two large trash bags containing approximately 3 1/2 pounds of marihuana in the bedroom closet.  In that same bedroom they found a copy of the signed lease with defendant's signature, a National Grid electric bill for the LeRay address in defendant's name, $24,000 in cash in a safe, and another $2,100 on a night stand.  In the kitchen they found 6.8 ounces of cocaine in the cupboards and 3 ounces on the counter in open view.

Defendant was indicted on several drug-possession related counts. Prior to trial, he sought to suppress all of the drugs and items found in the apartment for lack of probable cause.  The court denied suppression finding the protective sweep to be a valid warrantless search.  Defendant also sought to prevent submission of certain evidence of prior bad acts.  After a Sandoval/Molineux hearing the court held that the People could submit proof of prior drug sales as probative of intent to sell, knowing, intentional and constructive possession, and the

existence of a narcotics business operated by defendant.  The
court also held that the People could seek to admit first-hand
knowledge testimony that defendant was a high-ranking member, or
participant in a drug organization, as well as evidence that he
was a member of a gang that operated a drug distribution
business.  However, the court prohibited hearsay testimony from
the officers and the People's witnesses about defendant's reputed
status as a gang member or drug dealer, and specifically barred
the People from eliciting the words "gang" or "Crip" from law
enforcement witnesses. Nevertheless, this prohibition was subject
to the People establishing a proper foundation for a hearsay
exception or exclusion and, if admitted, further subject to a
limiting instruction to the jury.

At trial, the People presented physical evidence and
testimony establishing defendant's involvement in the drug sale
operation at the LeRay Street residence.  Parole officers and
Task Force members testified as to defendant's arrest, the
protective sweep and the seizure of the drugs and drug
paraphernalia found in the apartment and vehicle, contraband
which was admitted into evidence. The People established that a
few months prior to his arrest defendant had commenced work at a
fast food establishment. The owner of the building testified that
defendant signed a month-to-month lease in February, that he paid
$650 monthly rent, and that in March, while she was considering
selling the building for approximately $68,000, defendant

expressed interest in purchasing the building, under an arrangement wherein he would supply a 30-50% deposit.

Three witnesses, including Sawyer, testified as to prior drug sales and defendant's alleged gang affiliation. Sawyer testified that on the day of the arrest, he went to the apartment to buy drugs from defendant. While inside the apartment, he gave defendant $50, sat on a couch in the living room and watched defendant enter the kitchen area, from which defendant emerged 15-20 minutes later, and handed Sawyer the cocaine. Sawyer also testified that defendant told him he was a member of a gang known as the Crips, and that Sawyer had seen defendant wear the Crips gang bandana.

The occupant of the upstairs apartment testified that on at least three occasions he had purchased drugs inside defendant's apartment, from Fineout, and that he had witnessed defendant coming and going from the residence. The upstairs occupant had also asked defendant about purchasing cocaine to establish his own selling business.

Another witness testified that he had known defendant for 15 years, and had purchased drugs from him in the past. He further testified that while he and defendant were incarcerated together, they talked about defendant's drug organization. He too stated that defendant told him he was a member of the Crips gang.

As relevant to this appeal, the judge charged the jury

under two theories of criminal possession based on the defendant's lack of actual physical possession of the drugs. In accordance with Penal Law § 220.25 (2), for the criminal possession of a controlled substance in the first and third degree counts only, the court instructed the jurors that

> "the presence of a narcotic drug or preparation in open view in a room under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare that substance for sale is presumptive evidence of knowing possession of that substance found by each and every person in close proximity to it at the time the substance was found.
> "What that means is if the people have proven beyond a reasonable doubt that the cocaine was in open view in a room and that the circumstances were such as to evince an intent, that is a conscious objective or purpose, to unlawfully mix, compound, package or otherwise prepare the cocaine for sale, then you may, but are not required to, infer from that fact that each and every person in close proximity to the cocaine at the time it was found was in knowing possession of it. Whether or not to draw that inference is for you to decide entirely on your evaluation of the evidence."

The judge also instructed the jury on constructive possession for all of the charges, informing the jurors that,

> "a person has tangible property in his or her constructive possession when that person exercises a level of control over the area in which the property is found or over the person from whom the property is seized sufficient to give him or her the ability to use or dispose of the property."

With respect to the Molineux evidence, the judge gave a

limiting instruction on the defendant's prior bad acts and
alleged gang affiliation, informing the jurors that the evidence
was not offered to establish a propensity or predisposition to
commit the crimes charged, but rather as evidence of motive or
intent, or to show the absence of a mistake, or to show a common
plan or scheme, or for the purpose of identifying the defendant.
The court further informed the jurors that if they found the
evidence believable, they were permitted to consider it for this
limited purpose.[2]

The jury convicted defendant on all counts of the
indictment, finding him guilty of criminal possession of a
controlled substance in the first and third degrees (Penal Law §§

---

[2] The trial court's charge to the jury stated,
    ⸺    "There is evidence in this case on dates
    other than April 12th, 2010 the defendant may
    have sold or possessed controlled substances
    or other illegal substances, and that he was
    the subject of a drug investigation in the
    past, or may have been a member of a gang, or
    may have engaged in conduct in an attempt to
    bribe, intimidate or injure witnesses, or may
    have fled police custody⸺.
        "That evidence was not offered and must
    not be considered for the purpose of proving
    that the defendant had a propensity or a
    predisposition to commit the crimes charged
    in this case. It was offered as evidence for
    your consideration on the questions of motive
    or intent, or to show the absence of a
    mistake or to show a common plan or scheme or
    for the purpose of identifying the defendant.
    If you find the evidence believable, you may
    consider it for that limited purpose and for
    none other."

220.21[1],220.16[1]), criminal possession of marihuana in the second degree (Penal Law § 221.25), and two counts of criminally using drug paraphernalia in the second degree (Penal Law §§ 221.50[2] and [3]). The court sentenced defendant as a second felony offender to 16 years' incarceration followed by 5 years' post release supervision on the criminal possession of a controlled substance in the first degree, 11 years' incarceration and 3 years' post release supervision on the criminal possession of a controlled substance in the third degree, 3 years' incarceration and 2 years' post release supervision on the criminal possession of marihuana in the second degree, and one year terms each on the two counts of criminally using drug paraphernalia in the second degree, all to run concurrently.

On defendant's appeal the Appellate Division, Fourth Department, in a 4-1 decision, modified on the law, reversing the convictions on the counts of criminal possession of a controlled substance in the first and third degrees, ordering a new trial on those counts, and otherwise affirmed the convictions on the remaining counts. The majority concluded that the trial court committed reversible error in charging the jury on the presumption under section 220.25 (2) because the defendant was not within "close proximity" to the controlled substances at the time the substances were found, as required by the statute. The Appellate Division further concluded that the error was not harmless because there is no way to discern whether the jury

relied on this charge, or the constructive possession instruction, in convicting defendant of criminal possession of a controlled substance in the first and third degrees.  The majority rejected defendant's remaining arguments.  One Justice dissented, in part, concluding that the trial evidence supported a determination that the apartment was used as a "drug factory operation", and that defendant was in close proximity to the cocaine when he was apprehended outside, in his vehicle.

A Judge of this Court granted the People and defendant leave to appeal (21 NY3d 913 [2013]).  We now affirm the Appellate Division.

## II.

### A.

The People appeal the reversal and remittal for a new trial on the counts of the indictment for criminal possession of a controlled substance in the first and second degrees, arguing that the trial court properly instructed the jury under Penal Law § 220.25 (2).  The People contend the evidence supports the charge because the defendant was apprehended outside the front door of the residence, and he was under surveillance from the moment he walked out of the building until his arrest minutes later. The People further argue that if there was error it was harmless because of the overwhelming evidence of defendant's guilt on the two criminal possession charges, and because the

jury's guilty verdict on the marihuana and paraphernalia
possession counts demonstrates that the jurors concluded
defendant constructively possessed all of the drugs in the
apartment.

The defendant responds that while the court properly
charged the jury on constructive possession, the court should not
have instructed the jury on the Penal Law § 220.25 (2)
presumption because the latter applies only in cases where a
defendant is caught on the premises where the drugs are found,
and here defendant was arrested outside. He contends that the
error was not harmless under our holding in People v Martinez (83
NY2d 26 [1993], cert denied 511 US 1137 [1994]), because there is
no way of determining whether the jury convicted him based on the
section 220.25(2) presumption charge, or the constructive
possession charge.

We agree with the Appellate Division that the trial
court erroneously charged the jury because defendant was not
within close proximity to the drugs as required by section
220.25(2), and that, on this record, the error was not harmless
and a new trial should be granted.


II.

B.

Penal Law § 220.25(2) states, in relevant part, that:

"[t]he presence of a narcotic drug, narcotic
preparation, marihuana or phencyclidine in

open view in a room, other than a public
place, under circumstances evincing an intent
to unlawfully mix, compound, package or
otherwise prepare for sale such controlled
substance is presumptive evidence of knowing
possession thereof by each and every person
in close proximity to such controlled
substance at the time such controlled
substance was found . . . ."

(Penal Law § 220.25[2]).

In accordance with the statute, a court may charge the

jury with a permissible presumption, under which the jury may

assume the requisite criminal possession simply because the

defendant, while not in actual physical possession, is within a

proximate degree of closeness to drugs found in plain view, under

circumstances that evince the existence of a drug sale operation

(People v Daniels, 37 NY2d 624, 630-31 [1975]). The presumption

is rebuttable, and the jury may choose to reject its application

under the facts (id. at 631).

This statutory presumption, referred to as the "drug

factory" presumption (People v Martinez, 83 NY2d at 29), was

intended to allow police in the field to identify potentially

culpable individuals involved in a drug business, under

circumstances that demonstrate those individuals' participation

in a drug operation[3] (see Mem. of St. Commn. of Investigation,

---

[3] Defendant refers to the presumption allowed under Penal
Law § 220.25(2) as the "room presumption". As we discuss, the
presumption is intended to apply to participants in a drug sale
operation, and, in a proper case, may apply to persons caught or
arrested outside of the room where the drugs are found.
Therefore, the more accurate reference, and the one we adopt, is

Bill Jacket, L. 1971, ch. 1044; People v Rosado, 96 AD3d 547, 548 [1st Dept 2012], citing Donnino, Practice Commentaries, McKinney's Cons. Laws of NY, Book 39, Penal Law § 220.25).  The statute was designed "to remedy a fairly common situation wherein police execute a search warrant on premises suspected of being a 'drug factory' and find narcotics in open view in the room" (Letter from St. Commn. of Investigation, Dec. 1, 1971, Bill Jacket, L. 1971, ch. 1044, at 6-7). "The occupants of such 'factories,' who moments before were diluting or packaging the drugs, usually proclaim their innocence and disclaim ownership of, or any connection with, the materials spread before them. The police, under these circumstances, are often left uncertain as to whom to arrest" (Mem. of St. Commn. of Investigation, Bill Jacket, L. 1971, ch. 1044, at 4). By including within the scope of the statute all persons based on physical closeness to the drugs, regardless of any individual's property interest in the location where the drugs are found, the drafters of the statute also sought to address the difficulty of prosecuting persons other than the owner or lessee of the premises (Mem. of St. Commn. of Investigation, at 4 ["In addition, with the present burden of proof of knowing possession of dangerous drugs on the people[sic], successful prosecution of persons other than the owner or lessee of such premises is extremely rare."]).

Given the language of the statute, and with this

the "drug factory" presumption.

understanding of its purpose, a defendant is in "close proximity" within the meaning of section 220.25(2) when the defendant is sufficiently near the drugs so as to evince defendant's participation in an apparent drug sales operation, thus supporting a presumption of defendant's knowing possession. The statute anticipates an outer boundary beyond which the presumption does not apply, for "close proximity" defines a spatial element requiring that defendant's physical location is legally meaningful and suggestive of criminal involvement, but not so distant as to vitiate the experientially-based, real-world justification for presuming defendant has criminal possession.

The decisive consideration for a court determining whether a defendant is within "close proximity" is the distance between the defendant and the drugs. This determination is necessarily fact specific. Still, based on the text, the intent of the statute, and judicial construction of section 220.25(2), we glean certain general principles that guide a court's analysis.

The statute's requirement that the defendant is in close proximity to drugs in open view in a "room, other than a public place" supports the application of the presumption to persons who are physically present in the room where the drugs are found (see e.g. People v Coleman 26 AD3d 773 [4th Dept 2006][kitchen]; People v James, 266 AD2d 236 [2d Dept 1999][hotel room]; People v Plower, 176 AD2d 214 [1st Dept 1991][living

room]).

The presumption also may apply to a defendant apprehended on the premises, but outside of the room where the drugs are found.  As long as the proximity requirement is satisfied, nothing in the text limits the statute's reach to persons caught in the room itself.  However, as the case law establishes, the proximity determination requires careful consideration of the underlying facts related to the defendant's location on the premises when the drugs are found (see e.g. People v Rosado, 96 AD3d 547 [defendant fled to bathroom from bedroom where drugs were found]; People v Pressley, 294 AD2d 886 [4th Dept 2002][defendant in room adjacent to room where drugs were found]; People v Riddick, 159 AD2d 596 [2d Dept 1990] [defendant was in hallway adjacent to room with drugs]; People v Garcia, 156 AD2d 710 [2d Dept 1989] [defendant in the bathroom, drugs in another room of the apartment]).

Structural barriers may be a factor in determining whether the defendant falls within the intended statutory coverage, but are not a per se bar (see e.g. People v Hayes, 175 AD2d 13 [4th Dept 1991][defendant in a room separated from drugs by french doors]; People v Andrews, 216 AD2d 571 [2d Dept 1995][defendant in loft above table with drugs]). As the drafters indicated, the statute is intended to apply to a defendant who hides "in closets, bathrooms or other convenient recesses" (Letter from St. Commn. of Investigation at 6-7; People v McCall,

137 AD2d 561, 562 [2d Dept 1988][defendant discovered lying behind a bar 50 feet from contraband]). Thus, the legislative purpose is furthered by an interpretation that takes into account the layout of the premises.

Once a defendant has left the premises the justification for presuming knowing possession is less tenable. We have long recognized that "statutory presumptions are without validity unless the probabilities based on experience and proof justify them" (People v Reisman, 29 NY2d 278, 286 [1971], citing Leary v United States, 395 US 6, 32-36 [1969] and People v McCaleb, 25 NY2d 394, 400-404 [1969]). Where the facts and a defendant's location lead to a conclusion counter intuitive to "the probabilities to be drawn from common experience" (Daniels, 37 NY2d at 631), the presumption has no place.

Nevertheless, because the statute is grounded in the realities of police investigatory work into illegal drug sales, the presumption may apply even in cases where a defendant has exited the premises, when the defendant is caught in immediate flight, or apprehended fleeing the premises "upon the sudden appearance of the police" (Letter from St. Commn. of Investigation, at 6-7; see e.g. People v Hogan, 118 AD3d 1263 [4th Dept 2014][fleeing the room with drugs and paraphernalia]; People v Alvarez, 8 AD3d 58 [1st Dept 2004][captured fleeing the apartment]; People v Snow, 225 AD2d 1031 [4th Dept 1996] [defendant admitted he had been in the dining room with the drugs

but hid in the basement upon execution of the warrant]; People v

Miranda, 220 AD2d 218 [1st Dept 1995][captured fleeing the

apartment]). We need not determine on this appeal how far from

the premises defendant may be apprehended and still be subject to

the presumption. We note, however, that the boundary in these

cases is not limitless.  Suffice it to say, that each incremental

enlargement of the distance between the defendant and the

premises where the drugs are found tests the underlying

justification of the presumption, and makes it susceptible to

challenge.


II.

C.

Applying these principles to the record before us, we

conclude that defendant was not in close proximity to the drugs

when they were found within the meaning of section 220.25(2).  He

was not in the room where the drugs were found, in an adjacent

room within the same apartment, or in a "closet, bathroom or

other convenient recess[]."  Nor was he found immediately outside

the premises while trying to escape.

Here, defendant was found outside the premises, several

feet from the front door to the building where the apartment was

located.  Once outside, defendant entered and locked his vehicle

before the officers approached and eventually arrested him.

There was no evidence to suggest, and the People have not argued,

that defendant was in immediate flight from the premise when he walked out into the driveway. The officers entered the apartment several minutes after defendant had exited and was arrested, and only because defendant's yells to "Call Chino" made the officers apprehensive of potential danger and possible destruction of evidence, which lead to their protective sweep of the apartment. Therefore, the Appellate Division correctly determined defendant was not within close proximity to the drugs, and this case was "unlike the scenario envisioned by the Legislature" (People v Kims, 96 AD3d 1595, 1596 [4th Dept 2012]).

The People argue the drug factory presumption applies because the defendant was apprehended immediately "steps away from the front door," and officers saw him exit just prior to his arrest. We are unpersuaded by the People's reasoning.

The People rely on People v Daniels (37 NY2d 624), claiming our decision in that case compels reversal here because, like in Daniels, officers observed defendant leave prior to his arrest outside the premises. Daniels, however, addressed the quantum of evidence required to properly charge the jury on corroboration of accomplice testimony in a drug possession case. We concluded that the evidence of contraband on the kitchen table sufficiently connected the defendants to the crime and, therefore, corroborated the accomplice testimony that he and the defendants were involved in a drug business (id. at 630-31). In reaching our conclusion that the court properly instructed the

jury on corroboration, we stated that the court's instructions must be viewed in light of the entire record. In Daniels the evidence showed that two defendants were apprehended in the apartment with drugs in open view, and the third defendant, in whose apartment the drugs were found, was arrested after he was observed leaving the apartment.  We stated that the presumption under Penal Law § 220.25(2) could apply in a proper case to convict defendants in close proximity to drugs, but, given the record, "reliance need not be placed solely on the statutory presumption. The *presence of the drugs and the defendants in the apartment* [was] a sufficient basis on which the jury could conclude that the accomplice was telling the truth when he testified that each of the defendants was involved in the drug business with him" (id. at 631 [emphasis added]). Thus, our discussion of the presumption was not necessary to our decision (see id. at 632 [concurring opinion]). We simply recognized that the presumption might apply in a proper case, including one in which a defendant is in the apartment, but not the same room where the drugs are found.

Other cases cited by the People do not affect our analysis of the legal principles that apply to this appeal. The People either misread the facts, as in People v Kelly (261 AD 2d 133 [1st Dept 1999]), where despite the People's opposite contention, the defendant was apprehended in the same room as where drugs were found (id. at 134 ["34 vials of crack cocaine

[were] found within [defendant's] reach in the apartment he shared with the seller"]), or the decisions in those cases do not compel a different outcome in this case (see e.g. People v Santiago 243 AD2d 328 [1st Dept 1997][court summarily concluded defendant was in "close proximity" to the drugs as required by section 220.25(2) and People need not prove defendant was in the same room]; People v Alvarez, 8 AD3d 58 [1st Dept 2004][defendant jumped out of an apartment under circumstances evincing his attempted flight from the police]).

To the extent the People argue that the presumption applies so long as a defendant is under surveillance the entire time after the defendant exits the premises, we reject this interpretation of the statute because it lacks a definable end point. For example, we can discern no way to distinguish defendant's case from one in which the officers find a defendant down the street, or perhaps a mile away, from the house. Following the People's reasoning to its logical conclusion, so long as at all times a defendant is under surveillance, the presumption applies regardless of the defendant's distance from the premises. As such, the People's interpretation would lead to uncertainty, and fails to provide appropriate guidance as to how far an officer may pursue a defendant before reaching the outer expanse of the statute. We believe that this interpretation potentially extends the presumption to defendants and scenarios that are beyond the statute's intended coverage, and lends itself

to abuse.

The People claim that even if the charge was erroneously given, the error was harmless. We held otherwise in People v Martinez, and on this record we find no legal distinction between defendant's case and Martinez, thus we cannot say the error was harmless (83 NY2d 26; see People v Crimmins, 36 NY2d 230, 242 [1975]).

In Martinez, we concluded that where a jury returns a general verdict and it is impossible to determine if the verdict was based on an illegal charge, or on an alternative proper charge -- in Martinez, as here, the alternative charge was on constructive possession -- the error cannot be harmless (83 NY2d 26). If there is some evidence to which the jury could have applied the impermissible charge to reach an erroneous verdict, then a new trial should be ordered. Here, because the jury could have relied either on the evidence of constructive possession, or on the room presumption to infer close proximity based on Sawyer's testimony and the police observations, it is impossible to determine which theory served as the basis for its verdict on the two counts of criminal possession of cocaine.

III.

Defendant asserts three grounds for reversal on his cross appeal relating to the marihuana and drug paraphernalia counts. He claims that the court admitted evidence of bad acts in violation of Molineux, the protective sweep evidence should be

suppressed, and the prosecutor committed misconduct during summation. None of these challenges support reversal of the Appellate Division.

Defendant argues that the court committed error in permitting testimony about his alleged gang affiliation because such testimony lacks any connection to the charged crimes, and there was no testimony that any of the drugs recovered were related to gang activity. References to defendant's alleged gang membership and gang affiliation were improperly admitted, but the error was harmless.

"[E]vidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Cass, 18 NY3d 553, 559 [2012]; People v Molineux, 168 NY 264 [1901] [remaining citations omitted]). Evidence regarding gang activity can be admitted to provide necessary background, or when it is "inextricably interwoven" with the charged crimes, or to explain the relationships of the individuals involved (see People v Faccio, 33 AD3d 1041, 1042 [3d Dept 2006], lv denied, 8 NY3d 945 [2007]).

Here, the references to gang activity were not relevant to any material issue. The People's theory centered on possession and on intent to sell. It is clear, that the testimony about defendant's alleged gang affiliation would not have provided any

relevant background information about how the drugs came to be located in his apartment. Similarly, there was no need to explain the defendant's relationship to the witnesses by referencing gang affiliation; the testimony clearly indicated their status as buyers as well as their respective relationships to the defendant. Finally, gang affiliation was not interwoven with the charges because there was no evidence that defendant was working with fellow members of his gang to distribute drugs.

However, there was overwhelming evidence of guilt, including testimony that defendant leased the apartment where the marihuana and drug paraphernalia were found, defendant had large amounts of cash without any apparent lawful source for the money, and defendant had sold drugs out of the apartment on prior occasions.  Therefore, any error admitting testimony regarding gang affiliation was harmless (see generally Crimmins, 36 NY2d 230).

Defendant's other claims based on testimony of prior bad acts are meritless. Evidence of prior drug sales was probative of defendant's intent to sell, not merely possess the narcotics, and it was not an abuse of discretion to find that the probative value of the prior sales outweighed the danger of prejudice (see Cass, 18 NY3d at 560). Evidence of defendant's escape was probative of consciousness of guilt, and whether the defendant was seeking to escape from being taken into custody on a parole violation goes to the weight of the evidence not its

admissibility (see People v Yazum, 13 NY2d 302, 304 [1963]; People v Bennett, 79 NY2d 464 [1992]). The court also gave appropriate limiting instructions as to this evidence (see e.g. People v Rivers, 18 NY3d 222, 226 [2011] [admittance of improper testimony minimized by curative instruction]; People v Giles, 11 NY3d 495, 500 [2008][new trial ordered where trial court erred by failing to issue a limiting instruction to cure the potential prejudicial effect of the evidence of the uncharged crimes]).

The defendant's claim as to the trial court's refusal to suppress evidence seized from his apartment subsequent to the protective sweep presents a mixed question of law and fact. Our review is limited to whether there is record support for the determinations of the court below, and "unless there is no view of the evidence that would support that determination, we are bound by the suppression court's finding" (People v Wheeler, 2 NY3d 370 [2004]). McNitt's testimony that when defendant yelled out "Call Chino", he believed the officers might be in danger and evidence might be destroyed, supports the finding that exigent circumstances existed (see Maryland v Buie, 494 US 325 [1990]).

Finally, the defendant's contention that the People's summation constituted prosecutorial misconduct is unpreserved for review since defendant failed to object during the summation (People v Utley, 45 NY2d 908 [1978]; People v Patterson, 121 AD2d 406 [2d Dept 1986], lv denied 68 NY2d 759 [1986]).

IV.

The Appellate Division properly concluded that defendant was not within close proximity to the drugs found in the apartment within the meaning of Penal Law § 220.25(2), and that defendant's challenges to his convictions otherwise are without merit or unpreserved.  Therefore, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Graffeo, Read, Smith, Pigott and Abdus-Salaam concur.

Decided October 23, 2014